106  337
27a 375
106  337
28a 509
106  337
128  463
106  337
130   54
106  337
39a 400
106  337
145  461
106  337
150  593
152  185
106  337
49a 593
52a 581
106  337
47a 414
106  337
59a 475
106  337
183  278
106   337
183   278
106   337
199  5347
106   337
104a 5541
f105a6  38
105a 5150
106   337
203  1369

## THE CITY OF QUINCY

### *v.*

### LORENZO BULL *et al.*

*Filed at Springfield March 29, 1883.*

1. MUNICIPAL CORPORATION—*power to grant leave to lay water pipes under the streets.* A city having the exclusive power and control over its streets may allow any use of them consistent with the public objects for which they are held, and uses for the purpose of sewers, gas pipes, water pipes, etc., are among those which may be granted.

2. Where a charter in terms gives a city the power to supply, or authorize its inhabitants to be supplied with, water, the city council may use, or as an incidental power may permit a contractor to use, the streets for this purpose. The use of streets for the purpose of laying water pipes being necessary to the construction of water works, the power to contract for their construction includes, as a necessary incident, the power to contract for the use of the streets for that purpose.

3. SAME—*granting right of way over streets for certain purposes—subject to reasonable regulation.* Where a city grants a right of way over its streets for a number of years for the purpose of laying water pipes under the ground, neither the grant, nor an injunction to restrain the city from preventing the laying of such pipes, will interfere with the police power of the city over the streets, so as to debar it from making reasonable regulations as to the manner of making use of the right of way granted.

4. SAME—*construction of grant of right to lay water pipes under streets—whether limited to such streets as may be indicated from time to time by the city council.* An ordinance of a city granted to a contractor the exclusive right to construct, maintain and operate water works in the city for thirty years, and the exclusive right to sell water in the city for municipal and private use, and also granted to him the right of way in all the streets and alleys of the city for the purpose of laying mains and services, etc., his compensation for the outlay to depend upon the sale of water for municipal and private use. To guard against an insufficient supply of water, the ordinance further provided that within a time limited the contractor should have constructed water works of a certain specified extent, and that he should extend the mains when ordered by the city council, with the qualification that in such case there should be a fire hydrant on each cross street intersection, for which the city was to pay him a certain price: *Held,* that by the ordinance there was granted the right to extend the mains under any of the streets and alleys without being ordered to do so by the city council; and that a further clause that the city council should indicate the location of mains and hydrants did

22—106 ILL.

not require a different construction, as that might be satisfied by indicating the portion of the street to be used.

5.   SAME—*grant of use of streets is not revocable.*   Where a city, by ordinance, grants the right to a party to construct water works at his expense to supply the city and its inhabitants with water, with the right to lay water pipes under the surface of the streets and alleys, for a period of years, which grant is accepted and the work partially performed, the privilege of the use of the streets is not a mere license, revocable at the pleasure of the city council, but it is a grant under an express contract, for an adequate consideration, and is binding as a contract.   When there is power in a city to make a contract, there is power to make one that will bind the parties.

6.   ORDINANCE—*when void in part and valid as to other matters.*   One part of an ordinance or law may be declared void while another part is considered valid, when the different parts are capable of being separated in their operation.   So where an ordinance of a city grants an exclusive use of its streets for thirty years for laying water pipes, etc., to supply the city with water, and fixes the compensation the city shall pay for the use of water supplied to it, the ordinance may be void as to the grant of an exclusive use, and as to the indebtedness incurred thereby, it being in excess of the constitutional limit, yet valid as to the right of the grantee to construct the water works and lay his mains and pipes in the streets for the purpose of supplying water for private use.

7.   INJUNCTION—*construed, as to the time of its continuation.*   Where a city had granted to an individual the right to construct and maintain water works for thirty years, with leave to extend water pipes through its streets, and afterward the city repudiated the contract and sought to prevent the grantee from laying such pipes under the streets, as he was entitled to do, the court, on bill for that purpose, entered a decree perpetually enjoining the city from interfering to prevent the exercise of such right.   It was *held,* that the fair construction of the decree of injunction was, that it was coextensive with the right granted and claimed, and had no further extent.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

This was a bill in chancery, brought by Lorenzo Bull, Edward Prince and William B. Bull, against the city of Quincy and its chief of police, to restrain their interference with the laying of water pipes by the complainants in streets of said city.   The circuit court overruled a demurrer to the

bill, and the defendants abiding by their demurrer, the court made a decree in favor of the complainants, enjoining such interference, which decree, on appeal to the Appellate Court for the Third District, was affirmed, and the city appealed to this court.

The bill sets forth, in substance, that in the spring of 1873, the city of Quincy being without water works, and having no supply of water to extinguish fires, except such as was contained in public cisterns distributed here and there in the business portions of the city, established the so-called "temporary pumping works," these consisting of a pump and boiler set up in a pumping house built by the city on the edge of the Mississippi river, and other property used in connection therewith. The city laid less than half a mile of pipe to connect with said pump, the pipe so laid extending from said river up Main street, to the corner of Fifth and Main streets. Through this pipe it was intended to pump water from the river into a few public cisterns which could be reached in this way; that said works soon proved wholly inadequate, and there was a desire for a general system of water works to be established in the city, whereupon the city council began to negotiate with complainant Prince to induce him to construct water works in the city, the city having no money to build with itself, and being indebted beyond the five per cent limit of the constitution, could borrow none; that the negotiations with Prince resulted in an agreement between Prince and the city of Quincy, based on the terms of the ordinance next mentioned; that on August 7, 1873, the city council of the city passed an ordinance, entitled "An ordinance to provide the city of Quincy with water." The bill sets out the ordinance at length. By section 1 thereof the exclusive right to construct, maintain and operate water works in Quincy is given to Prince for thirty years. By section 9 he is given the exclusive right to sell water in the city for municipal and private use, with a proviso that such grant should not deprive

any one from hauling water from the river and selling, as theretofore.    Section 11 is as follows:

"Sec. 11.    The city of Quincy grants to said Prince the right of way in all streets and alleys in the city, and all other property·over which said city has or may have control, for the purpose of laying mains and services, valves, valve boxes, extra castings and necessary main and service appendages, said Prince being in all cases responsible for all damages arising from said work, and in case of alteration of street grades the city paying said Prince the amount of damage done him by such alteration."

By section 2 the city conveys to Prince the boiler, pump, pump house, etc., and other things purchased by the city for temporary pumping works, Prince therein agreeing to pay the city its actual outlay in said works.    By section 3 Prince agreed to cover a certain portion of the business part of the city with mains, and have water turned on in one hundred days from his acceptance of the ordinance.    Section 19 provides that when Prince shall, by an instrument in writing, filed with the city comptroller, signify his acceptance of the terms and provisions of the ordinance, then the ordinance, together with such written acceptance, shall constitute a contract between the city and Prince.    By other sections of the ordinance Prince agrees that if the city shall order mains, he will obey the order of the city in that behalf, the condition of the city's ordering mains being, that one fire hydrant shall be ordered at each cross street intersection, for each of which fire hydrants the city agrees to pay Prince $200 a year, in monthly payments.

The bill alleges acceptance by Prince of the ordinance as provided, on August 11, 1873, and compliance by him with all the requirements of the ordinance on his part, and that on or before October 1, 1873, he paid the city between seven and eight thousand dollars for said temporary pumping works; that orders for extensions of mains, and the location

of hydrants, were given by the city at different times during 1874, 1875, 1877, and, lastly, on October 6, 1879, and these were obeyed by Prince, until, when the last order had been obeyed and fulfilled, Prince had laid seven miles of mains, and located seventy-seven hydrants, and these were located in and furnished a fire protection to the business and more thickly settled residence portions of the city; that Prince assigned portions of his interests to his co-complainants, and at the commencement of the suit the complainants owned the water works built under the ordinance; that complainants had a large number of private consumers of water, and had built up an extensive and valuable business in supplying factories, business houses, hotels, stores, etc., in Quincy; that on March 12, 1881, the city council passed an ordinance repealing said ordinance of August 7, 1873, which was without the consent of the complainants; that they went on furnishing water, and the city continued to use it as before, the city council, at the time of the repealing ordinance, passing a resolution that the city would pay a just and equitable compensation for whatever use the city should make of the hydrants of the water works company; that the city being indebted to complainants for water furnished, and three different suits having been instituted for the recovery of amounts due, and the city having set up, by way of defence to each suit, that the quality and quantity of water furnished by complainants were not such as called for by the ordinance, and different members of the city council and the mayor having, at different times, complained of the quality of water furnished, the complainants, in the fall of 1881, commenced the construction of, and partially completed, a large reservoir, of 16,000,000 gallons capacity, on ground of their own, at the highest point in said city of Quincy, at an expense of many thousand dollars; that the only source of supply for such system of water works, as existing when said reservoir was commenced, was two large tanks, situated at

Twelfth and Broadway streets, in said city; that without a reservoir there was no way of improving the quantity and quality of the water, and that for a reservoir no point so good as that where complainants had located their reservoir could be found; that owing to the distance of said reservoir from the nearest point of their system of water works, it became necessary to buy and lay a large amount of new mains and pipes to connect the reservoir with their water works; that at the same time, complainants, being requested by many citizens so to do, determined to extend their system of water works, to afford the convenience of water to many inhabitants living where their works had not, up to that time, extended, and to connect with said reservoir and make said extensions it became necessary for complainants, in the fall of 1881, to buy a large amount of new pipe, which they, relying on the faith of the ordinance of August 7, 1873, did, at an expense to themselves of $40,000; that said pipe began to arrive in January, 1882, and upon arrival of the same had been distributed on and along the line in which their extension was to be made, and that in distributing the pipe, the same had been done so as to interfere as little as possible with travel or with the individuals dwelling on the streets; that on January 16, 1882, the city council passed ordinance No. 119, and on February 20, 1882, ordinance No. 121. Each ordinance is in substance and effect the same, and declares the things which complainants were authorized to do under the ordinance of August 7, 1873, a nuisance, and requires the police of the city to arrest any one engaged in placing any obstruction whatever in the streets, or in digging up the streets, and to seize and move away any such obstruction, unless the leave of the mayor or the city council, entered of record, was first had for the doing of the same; that complainants afterward, in a petition to the city council, requested leave to lay pipes along the streets of their contemplated extension, but their petition was disregarded, no action

being taken thereon, except to order it filed; that the pipe ordered by complainants still continuing to arrive after the passage of the two last named ordinances as before, their contractor proceeded with the hauling, the result being a number of prosecutions under the ordinances last aforesaid, the arrest of the teamsters doing the hauling, by the police, and the seizure and removal by the police of the pipe of complainants; that the city threatened to continue arrests under said ordinances, and to enforce them, even by force, if necessary, and complainants being required to employ a great many men, and the city threatening to arrest them as often as there was any digging in the streets, to avoid these interruptions, which made, and would make, the further prosecution of their business impossible, and to prevent innumerable suits, an injunction was asked to restrain interference in making use of any of the streets of the city for the purpose of laying water pipes to connect complainants' water works with the reservoir mentioned, or for the purpose of making extensions of their system of water works, or of connecting any private consumers of water with the water mains laid or to be laid. Such injunction was decreed.

Messrs. SIBLEY, CARTER & GOVERT, for the appellant:

A fair construction of section 11 fails to show an intention to grant to Prince the right to use all the streets and alleys, etc., of the city for thirty years, in any manner he might think fit, for his own private advantage. But if such was its import, section 11 is void for want of power in the city council to make it binding on its successors. Municipal corporations possess a double character,—one governmental, legislative or public, the other, "in a sense," proprietary or private. Dillon on Mun. Corp. sec. 39; Potter on Corporations, sec. 394, p. 476; *Bailey* v. *Mayor of New York*, 3 Hill, 531; *Oliver* v. *Worcester*, 102 Mass. 189; *Commissioners* v. *Duckett*, 20 Md. 468; *Western Savings Fund Society* v. *Philadelphia*, 31 Pa. St.

175; *The People ex rel.* v. *Detroit,* 28 Mich. 228; *Small* v. *Danville,* 51 Me. 359.

In adopting section 11 of the ordinance in question, the city council was acting in its governmental and legislative capacity, and not in a private sense. *City of Detroit* v. *Corey,* 9 Mich. 165; *State ex rel.* v. *Cincinnati Gas Light and Coke Co.* 18 Ohio St. 262.

No legislative body can so part with its powers by any proceeding as not to be able to continue the exercise of them. It can and should exercise them again and again,—as often as the public interests require. Cooley on Const. Lim. 206; *Gozler* v. *Georgetown,* 6 Wheat. 596; *East Hartford* v. *Hartford Bridge,* 10 How. 535.

The following and many other cases uphold the doctrine that a municipal corporation has no power to devote its streets to a different use from that to which they were originally dedicated, even by the license of the corporate authorities or by legislative enactment: *Melhaw et al.* v. *Sharp,* 17 Barb. 485; *Davis* v. *Mayor of New York,* 14 N. Y. 506; *People* v. *Kerr,* 27 id. 188; *Presbyterian Church* v. *Mayor,* 5 Cow. 538; *Coates* v. *Mayor,* 7 id. 585; *Mayor* v. *Second Avenue R. R. Co.* 32 id. 261; *State* v. *Graves,* 19 Md. 351; *Callender* v. *Marsh,* 1 Pick. 417; *O'Connell* v. *Pittsburg,* 18 Pa. St. 187; *Smith* v. *Washington,* 20 How. 135; *Graves* v. *Otis,* 2 Hill, 466; *Lafayette* v. *Bush,* 19 Ind. 326; *Creal* v. *Keokuk,* 4 Green, 47; *Sherman* v. *Hartford Bridge Co.* 29 Conn. 523.

The diversion of a public street from its appropriate use, or grant of its use to a private individual for other purposes than for travel, if it can be made, can be made only by legislative authority. *Commonwealth* v. *Ruch,* 14 Pa. St. (2 Harris,) 186; *Commonwealth* v. *Bowman,* 3 Pa. St. (3 Barr,) 202; *Waterman* v. *Philadelphia,* 33 Pa. St. 206; *St. Johns* v. *New York,* 3 Bosw. (N. Y.) 483; *Richmond Gas Light Co.* v. *Middleton,* 59 N. Y. 228; *State* v. *Cincinnati Gas Co.* 18 Ohio St. 262; *Smith* v. *Metropolitan Gas Co.* 12 How. Pr. 187;

*Indianapolis* v. *Indianapolis Gas Co.* 66 Ind. 462; *Lord* v. *Oconton*, 47 Wis. 386; *Mathews* v. *Alexander*, 68 Mo. 115; *State* v. *New Brunswick*, 1 Vroom, 31.

Messrs. MARSH & McFADON, for the appellees:

The facts in the bill admitted by the demurrer show a contract with Prince binding upon the city, if it had the power to make such grant. *City of Burlington* v. *Burlington Street Ry. Co.* 49 Iowa, 147; *Mayor* v. *Second Avenue R. R. Co.* 32 N. Y. 272; *Railway Co.* v. *Village of Carthage*, 36 Ohio St. 634; *State ex rel.* v. *Cincinnati Gas Co.* 18 id. 295.

The city council, by virtue of its exclusive control over the streets, had the right to make the grant. Private Laws 1857, p. 170, sec. 33; *Cairo and Vincennes R. R. Co.* 92 Ill. 174; *Moses* v. *Pittsburg, Ft. Wayne and Chicago R. R. Co.* 21 id. 522; *Murphy* v. *Chicago*, 29 id. 279; *Chicago and Northwestern R. R. Co.* v. *Elgin*, 91 id. 251. The only limitation being that the use must not be exclusive, so as to bar all travel, and the purpose must be one required by public convenience. 2 Dillon on Mun. Corp. (3d ed.) sec. 688; *People* v. *Walsh*, 96 Ill. 248; *City of Chicago* v. *Rumsey*, 87 id. 364. And the use of the streets for the purpose of laying gas and water pipes is a proper use of said streets. 2 Dillon on Mun. Corp. (3d ed.) secs. 691, 697; *Foster & Co.* v. *Fowler*, 60 Pa. St. 27.

By implication from the express power to supply the city with water, the power to grant the use of the streets, as done in the ordinance of 1873, existed in the city council. *State ex rel.* v. *Cincinnati Gas Co.* 18 Ohio St. 295; *Des Moines Gas Co.* v. *Des Moines*, 44 Iowa, 508; *Indianapolis* v. *Gas Light Co.* 66 Ind. 396; 2 Dillon on Mun. Corp. (3d ed.) sec. 697.

Such an ordinance will be interpreted by the rules governing contracts, and not by rules for construing laws. *Argenti* v. *San Francisco*, 16 Cal. 270; *Touchard* v. *Touchard*, 5 id. 307; *Holland* v. *San Francisco*, 7 id. 361.

Where a city makes a contract under its private or local powers, its contracts are as binding as those of an individual. *Lloyd* v. *Mayor,* 5 N. Y. 375; *Bailey* v. *Mayor,* 3 Hill, 531; 1 Potter on Corporations, secs. 376, 395.

But a contract relating to pipe-laying is a purely local matter, and is made under the private powers of a city, and not under its governmental powers, and hence binding on a city as the same kind of contract would be on an individual, (*The People ex rel.* v. *Mutual Gas Light Co.* 38 Mich. 155,) and contracts made by a city for the purchase of gas and water are contracts made under the local and private powers of a city, and hence binding upon it.   Cooley's Const. Lim. 249, sec. 282, note 1; 1 Dillon on Mun. Corp. (3d ed.) sec. 27; *City of Indianapolis* v. *Indianapolis Gas Co.* 66 Ind. 406; *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 648; *Western Savings Fund Society* v. *City of Philadelphia,* 31 Pa. St. 189; *Bailey* v. *Mayor,* 3 Hill, 531; *Western College* v. *Cleveland,* 12 Ohio St. 377; *Detroit* v. *Corey,* 9 Mich. 183; *De Voss* v. *Richmond,* 18 Gratt. 338; *Gale* v. *Kalamazoo,* 23 Mich. 351.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The questions presented here are chiefly upon the ordinance of August 7, 1873.   One is a question of construction of the ordinance, it being insisted that the ordinance, in its purport, gave to Prince the right to extend his water mains only when so ordered by the city council.

By the 1st section of the ordinance there is granted to Prince the exclusive right to construct, maintain and operate water works in Quincy for thirty years.   By the 9th section he is granted the exclusive right to sell water in the city for municipal and private use.   By the 11th section the right of way is granted to him in all the streets and alleys of the city for the purpose of laying mains and services, etc.   There is here granted, in the broadest terms, the right to construct

water works in Quincy, and the right of way in all the streets and alleys of the city, for the purpose of laying mains and services, etc. For compensation for the large expenditure he would incur, Prince was to depend upon the sale of water for municipal and private use. To guard against an insufficient accommodation of the needs of the city, other parts of the ordinance provided that within a time limited Prince should have constructed water works of a certain specified extent, and there is then the further provision that he shall "extend the mains when ordered by the city council to do so," which is with the qualification that in such case there shall be a fire hydrant on each cross street intersection, and that the city shall pay at the rate of $200 per annum for each fire hydrant until the number of one hundred hydrants was reached, and then a lower rate per hydrant. This provision that Prince should "extend the mains when ordered by the city council to do so," is relied upon in support of the position that Prince could not extend his water mains except when ordered by the city council to do so.

We can not regard that provision as limiting the broad rights granted to Prince by the portions of the ordinance first above referred to, so that he could only lay mains when and as ordered by the city council. Why should it do so? The wants of private citizens, or the interest of Prince in getting compensation from private use of water, might call for the extension of mains. The city council might not be willing to order it. Municipal needs might not require the extension, or the city might be unwilling or unable to incur the increased expenditure of $200 per hydrant at each cross street intersection, which would be required when it should order the extension. The extension of the mains without the order of the city council would cause no additional cost to the city, and would be in accommodation of the wants of citizens, and in aid of Prince in deriving compensation from private use of water. The ordinance has in view the supply-

ing of the wants of the inhabitants, and the compensation of Prince for his expenditure. We think it the reasonable and fair construction of the ordinance, taking all of its sections together, as appellees' counsel properly insists they should be, that Prince might extend the mains without being ordered to do so by the city council. The provision that the "city council shall indicate the location of mains and hydrants," we do not regard as requiring a different construction. That provision might be satisfied by indicating the portion of the street to be used.

The other and more important question which is made with respect to the ordinance concerns its validity. It is contended that the section of the ordinance granting the right of way for the purpose of laying water pipes, etc., in the streets, is entirely void, for want of power in the city council to make such a binding grant.

It is proper to have understood at the first what the exact question is which is involved here. Comment has been made in the argument on the exclusive right which the ordinance grants to construct and maintain the water works for thirty years, and on the compensation which the city agrees to pay for that period of time, and there is citation of authority adverse to the validity of the ordinance in respect of those features of it. In these respects we shall not consider the ordinance, or express any opinion, regarding it immaterial to the present decision. The ordinance might be deemed invalid as regards the particulars named, and yet be held good in all other respects, the rule being familiar that one part of a law may be declared void, while another part of the same act is considered valid, where they are capable of being separated in their operation. There is no exclusive use asserted here. It is not a question of exclusive use, but of use at all. There is no attempt at recovery from the city of the price of water on the basis of the contract rate. The simple question involved here is, whether complainants,

under the ordinance, have the right of way in the streets for the purpose of laying water pipes under the surface, to supply the city and inhabitants of Quincy with water, and for the purpose of repairing their pipes laid.

The ordinance of August 7, 1873, and the acceptance of it by Prince, constituted a contract between him and the city of Quincy, by which there was granted the right of way which is claimed. The power of the city to make such a grant seems quite clear. It may be derived from the exclusive control of its streets given to the city by its charter, section 33 of which is as follows : "The city council shall have exclusive power over the streets and alleys, and may abate any and all obstructions and encroachments therein in such manner as may be provided by ordinance." (Private Laws 1857, p. 170.) In this State there is vested in municipal corporations a fee simple title to the streets. Under the power of exclusive control over streets, it is very well settled by decisions of this court that the municipal authorities may do anything with, or allow any use of streets, which is not incompatible with the ends for which streets are established, and that it is a legitimate use of a street to allow a railroad track to be laid down in it. (*Moses* v. *Pittsburgh, Fort Wayne and Chicago R. R. Co.* 21 Ill. 522 ; *Murphy* v. *Chicago*, 29 id. 279 ; *Chicago and Northwestern Ry. Co.* v. *Elgin*, 91 id. 251.) The laying of water pipes under ground would be much less of an obstruction and interference with the ordinary purposes of a street than the laying and maintaining of a railroad track upon its surface.

It is the general doctrine that municipalities, under the power of exclusive control over their streets, may allow any use of them consistent with the public objects for which they are held, and that uses for the purpose of sewers, gas pipes and water pipes are among those for which the use of streets may be granted. 2 Dillon on Mun. Corp. (2d ed.) secs. 544, 551, and authorities there cited.

By section 22 of its charter the city is further empowered "to provide the city with water, to erect hydrants and pumps in the street for the convenience of the inhabitants." (Private Laws 1857, p. 181.) By implication from this express power to supply the city with water, the power to grant the use of the streets, as was done in the ordinance of August 7, 1873, existed in the city council of Quincy.

In 2 Dillon on Mun. Corp. (2d ed.) sec. 551, it is laid down: "The use of streets for the purpose of laying down water pipes, stands upon the same principle as their use for sewers and gas pipes. Where the charter gives to the city, in terms, the power to supply, or authorize the inhabitants to be supplied with, water, the municipal council may use, or as an incidental power may permit the contractor to use, the streets for this purpose, and the adjoining fee-holder is not entitled to compensation as for a new servitude,   ᵒ for it is not such, but only a proper or necessary use incident to a street in a populous place." And see, *State ex rel.* v. *Cincinnati Gas Co.* 18 Ohio St. 295; *Indianapolis* v. *Gas Light Co.* 66 Ind. 396; *Des Moines Gas Co.* v. *Des Moines*, 44 Iowa, 508.

Under this power to provide the city with water, then, the city might have erected its own water works and supplied itself with water, or it might have contracted with some one else to construct the water works and furnish the supply of water to the city. The city council saw fit to adopt the latter course, and accordingly, by the ordinance in question, made a contract with Prince that he should construct the water works, and at his own expense, and furnish the city with water. The use of the streets for the purpose of laying the water pipes may be regarded as indispensable for the construction of the water works, so that the power to contract for their construction included, as a necessary incident, the power to contract for the use of the streets for the purpose.

We thus find that there was full power in the city council to contract with Prince for the construction of these water works, and for his use of the streets for that purpose.    This privilege of the use of the streets by Prince is not a mere license, revocable at the pleasure of the city council, but it is a grant under an express contract, for an adequate consideration received, and binding as such.

The position taken by appellant in opposition to the binding force of the ordinance, as it respects the use of streets, is, that the city, in the passage of the ordinance, was acting in its public, not its private, character, and that the act was a legislative or governmental act, in the exercise of the city's legislative power of control over the use of its streets, which power of control was incapable of being abridged, but must be left free, to be exercised unrestrictedly from time to time, as the city council may see fit; and the case is put as if it were a diversion of the use of the streets from the purpose for which they were dedicated, and the permitting an obstruction in them by an individual for his private use.    As we have seen, this was no diversion of the use of the streets from their proper purpose, but a use of them consistent with such purpose.    It was not for a mere private object, but for the public benefit of the city, in supplying it with water.    We do not perceive how the doctrine as to the legislative governmental powers of a municipality can be brought in and have any bearing upon the facts of this case. See *DeVoss* v. *City of Richmond*, 18 Gratt. 338; 1 Potter on Corp. secs. 376, 395.

We have found that the city council had power to make this contract for the use of the streets; that it had power to contract for the putting in of the water works; that they could not be constructed without the use of the streets for the purpose,—and, therefore, the power to contract for the water works included, as a necessary incident, the power to contract for the use of the streets for that purpose.    The power

to make a contract, but not to make a binding one, is unmeaning. Where there is power to make a contract, there is power to make one that shall bind. We see no more to be involved here than the simple law of contract,—whether a municipal corporation may at its will repudiate the obligation of a fair contract which it has made, and which it was authorized to make. The attempt is to take back a grant which the city has made under a contract. The State itself may not revoke a grant it has made. The city must be bound by the contract and grant it has made, and had authority to make, the same as would an individual. 1 Potter on Corp. sec. 376; *City of Burlington* v. *Burlington Street Ry. Co.* 49 Iowa, 144.

Nothing hereinbefore said is to be taken as in any way in conflict with the decision in *Prince* v. *City of Quincy*, 105 Ill. 138. While the agreement for the payment of money may not be of obligatory force upon the city, because of the constitutional inhibition to incur any indebtedness when it is in debt beyond the limit prescribed by the constitution, yet in all other respects the contract may be valid and binding upon the city. We do not consider that the ordinance, or the injunction allowed, is a prevention of the exercise of the police power of the city over the streets, so as to debar the city council's making, or complainants being subject to any, proper and reasonable police regulation with respect to the manner of making use of the right of way granted.

An objection is taken to the form of the decree in the respect of the duration of the injunction, it being made perpetual. We think the decree must be considered with reference to the claim of right which is made, and that the fair construction of the injunction is, that it is coëxtensive with the existence of the rights granted by the ordinance of August 7, 1873, and has no further extent.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*