# METROPOLITAN GAS COMPANY OF HYDE PARK
## v.
## VILLAGE OF HYDE PARK.

*Injunction—Municipal Corporation—Gas Company—Right to Lay Gas Pipes—Ordinance—Acceptance—Attempted Repeal.*

Upon a bill filed by a gas company to enjoin a municipal corporation from preventing the complainant from laying gas pipes in the defendant's streets, it is *held:* That the threat on the part of the defendant to use force to prevent the laying of pipes by the complainant, is sufficient to justify the interference of the court, if the complainant is otherwise entitled to relief; that the complainant was justified in not applying for a permit to lay its pipes; that the ordinance in question was a valid grant to the complainant of the right to lay its pipes in the defendant's streets and furnish gas to its inhabitants; that said ordinance was accepted and acted upon by the complainant within a reasonable time; that no formal acceptance of the ordinance was necessary, acts done upon its faith, in furtherance of its purpose, by virtue of it and known by the defendant to have been so done, being sufficient to operate as an acceptance; that the acts of the complainant must be regarded, under the evidence, as done in good faith; that the ordinance and its acceptance constituted a valid contract between the parties, which was not affected by the attempted repeal of the ordinance; and that the case is not affected by a former ordinance granting exclusive privileges to another company.

[Opinion filed December 7, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Appeal from a decree of the Circuit Court of Cook County, dismissing appellant's bill for an injunction. The main facts in the case are as follows:

The Metropolitan Gas Company of Hyde Park became incorporated by that name under the general incorporation laws of the State, June 20, 1882, with a capital stock of $500,000, divided into five thousand shares of $100 each, the location of its principal offices being Hyde Park, in Cook County. The object for which it was formed was "the man-

ufacture, sale and supply of gas for illuminating, heating and mechanical purposes." Its certificate of incorporation was recorded in the office of the recorder of Cook County, June 23, 1882. The village of Hyde Park is a municipal corporation, being incorporated August 19, 1873, under and by virtue of "An act to provide for the incorporation of cities and villages," in force July 1, 1872.

June 26, 1882, the president and board of trustees of the village of Hyde Park passed an ordinance granting to appellant "exclusive permission and authority irrevocable," to lay its gas mains, pipes, feeders and service-pipes in all the streets, alleys, highways, etc., of the village, except in that part of the village territory south of 95th Street, and West of Stony Island Avenue and Lake Calumet. Section 2 of the ordinance makes it obligatory on the company to restore streets, opened for the purpose of laying pipe, etc., to a condition as good as before the opening thereof, and section 3 provides as follows: "The works of said company, of a capacity to manufacture and deliver at least 300,000 cubic feet of gas per day, shall be commenced within five years from this date, and the price of gas to consumers shall not exceed $3.50 per 1,000 cubic feet."

August 3, 1882, a written agreement, formally signed by the proper officers, and sealed with the corporate seals of the two corporations, was entered into by and between the village and the gas company, in and by which (after reciting that a necessity existed for a proper supply of gas for illuminating purposes in the village, that the village was not in a financial condition to expend the money necessary for the erection of gas works, and desired to induce the gas company to invest the necessary capital in the construction of works, mains and pipes, and in the manufacture and supply of gas, at a reasonable cost to the village and its inhabitants,) the village, in consideration of said circumstances, and the undertakings and agreements of the gas company, agreed to take and use, for twenty years from date of agreement, such quantity of gas manufactured by the company as should be required to light the streets and public buildings of the city, such supply to commence when the company should be in condition to furnish

the same, the village to pay $3 per 1,000 cubic feet for the gas and to erect such lamp posts as it might order, bear the expense of service pipes thereto, and of lighting the lamps and keeping them and the lamp posts in repair, the company to have the exclusive right to use such lamps and posts for lighting, etc.

The company on its part agreed as follows: To construct, maintain and operate in the village, works of sufficient capacity to manufacture the necessary supply of illuminating gas, of standard quality, to meet the requirements of said village, "at a cost not to exceed the terms of the ordinance granting permission to said company to lay gas mains, pipes, etc.," and to credit the village with the sum of fifty cents on each one thousand cubic feet of gas supplied to and paid for by it, the amount so to be credited to be, at the end of each fiscal year of the village, certified to and entered on the books of the village and the company, the village thereupon to be entitled to the same *pro rata* dividends as should be paid on the stock of the company; the village to have the right, at its option, to advance money for the extension of gas mains, any money so advanced to be credited and dividends paid thereon in like manner as above stated; to pay to said village, at the end of said time of twenty years, in case the village should comply with its contract, the amount standing to the credit of the village on account of said credit of fifty cents per thousand cubic feet, and in addition thereto, the then value of such pipes as might be laid by the village under its contract, etc.

In conclusion it was mutually agreed that, in the event the village should refuse to take gas for public use from the company, then the provisions of the agreement for payment to the village by the company should be considered canceled.

August 7, 1882, the president and board of trustees of the village passed another ordinance, granting permission to appellant to lay its gas mains, pipes, etc., in all of the streets, etc., of the village. This ordinance is substantially the same as the ordinance of June 26, 1882, with the following exceptions: It does not purport to grant exclusive authority, as did the former ordinance. It extends to all the village territory,

not excepting any part of the territory as did the former ordinance. It fixed the maximum price of gas supplied to private consumers at three dollars per thousand cubic feet, instead of three and one-half dollars, the maximum price fixed by the former ordinance, but provides that in case payment shall be made for the gas within twelve days next after the expiration of the month in which the gas shall have been used, there shall be a rebate to the consumer of fifty cents per thousand cubic feet. It concludes with the provision that this rebate shall not apply to street lamps and public buildings, the supply therefor to be subject to a special agreement.

Appellant purchased and obtained deeds of conveyance dated respectively November 15, November 25 and December 2, 1882, for the following described premises, situated in the village of Hyde Park, Cook County, Illinois: Lots 1 to 7, both inclusive, in block 2, in Crane & Mead's subdivision of 7 92-100 acres in the N. W. $\frac{1}{4}$ of Sec. 2, T. 38 N., R. 14 E., etc., for the consideration of $10,800, appellant assuming and agreeing to pay a mortgage to secure $2,000 on lots 4 and 5. (Abs. 29.) These premises were purchased and held by appellant, as the evidence conclusively shows, solely for the purpose of constructing gas works thereon.

May 1, 1883, Joseph T. Torrence and David C. Bradley, who appear by the evidence to have been stockholders, and the former president and the latter vice-president of the company, made, in their own names, but for the benefit of the company, a contract with T. G. Springer, by which it was agreed substantially as follows: Torrence and Bradley, in consideration of Springer's agreement, sold and assigned to Springer all their interest in the capital stock, property and franchise of the company. Springer on his part agreed to build and equip, ready for use, first-class gas works, for the manufacture of illuminating gas, of a sufficient capacity to produce 400,-000 cubic feet of gas per day, on lots 1 to 7, inclusive, in Crane & Mead's subdivision in section 2, town 38 north, range 14 east, etc., in Cook County, Illinois, and to have such works ready to furnish gas within six months from the date of the agreement, and to turn the completed works over to the

Metropolitan Gas Company of Hyde Park. It was further agreed that, for the purpose of raising money for the construction of the works, Springer should cause the company to issue twenty-year seven per cent. bonds, secured by mortgage or deed of trust on the company's property, the total amount of the principal of said bonds not to exceed $200,000, and that as soon as the bonds and mortgage were issued and the mortgage filed for record, and, in any event, not later than three months from date of agreement, Springer would assign to Torrence and Bradley one-third of the entire capital stock of the company, without further consideration, etc., and would also, out of the proceeds of said bonds, put in and lay in the village all mains, pipes, etc., to supply the gas required of the company by the village, and that the gas company should make all necessary expenditures for perfecting its franchises and securing contracts for gas, etc.

May 12, 1883, the following communication from appellant was presented to the president and board of trustees of the village, at their meeting held on that day:

" To the President and Board of Trustees of the Village of Hyde Park.

" GENTLEMEN : You are hereby notified that the Metropolitan Gas Company, of the village of Hyde Park, county of Cook and State of Illinois, a corporation duly organized under and by virtue of the laws of Illinois, and whose organization has been fully completed, has commenced business, and that, in view of, and under the provisions of the ordinance passed by the president and board of trustees of the village of Hyde Park, on, to wit, the 7th day of August, A. D. 1882, granting said corporation the right to lay pipes and operate gas works in said village, said corporation has purchased the following real estate in said village on which to erect its works, to wit: Lots 1, 2, 3, 4, 5, 6 and 7, in block 2, in Crane and Mead's subdivision, in section 2, town 38 north, range 14 ; the title to the same being taken and recorded in the name of said Metropolitan Gas Company, on which the said company has paid to the said village the taxes ; and, further, that said company has entered into contracts for the erection of its works and

machinery, and for the laying of sufficient iron pipe to supply the said village, and that, by such contract, it has provided that said works and pipe shall be in a condition to furnish a full supply of gas before the end of next November; that all this has been done under and in view of the said ordinance, and said company are proceeding, in good faith, to the erection of works that shall have a capacity of about 400,000 cubic feet of gas per day. All of which is respectfully submitted.

"JOHN M. BROWN,
"Secretary of the Metropolitan Gas Company."

The foregoing communication was referred by the president and board of trustees to the judiciary committee of the board, and afterward at the same meeting, and before the judiciary committee had made any report, the following occurred: "Mr. Mason moves a reconsideration of the vote referring the communication from the Metropolitan Gas Company to the judiciary committee, with directions to confer with the officers of said company," etc. "The motion was carried," etc. Afterward, and at the same meeting, the following ordinance was passed, approved and filed:

"Be it ordained by the president and board of trustees of the village of Hyde Park:

"That the ordinance passed and approved June 26, 1882, entitled, 'An ordinance concerning the Metropolitan Gas Company, of Hyde Park,' and the ordinance passed and approved August 7, 1882, entitled, 'Ordinance for the Metropolitan Gas Company of Hyde Park,' be, and the same are hereby repealed."

The contract made by Torrence and Bradley with Springer was not carried out. The company, early in the spring of 1884, had plans and specifications for its gas works prepared, and let the contract for its work to one Courtney, who immediately commenced the work and had made a large excavation, about 120 feet wide by 18 feet deep, for the gas holder; had excavated for the foundation, built nearly all the foundation walls up above the surface of the ground ready to receive the brick work; had made a sub-contract for the brick, and had delivered on the ground 116,000 brick; had purchased lumber,

and had the frames made and the cut stone work and everything pertaining to the finishing of the building, when he was stopped by the company, on account of certain condemnation proceedings in relation to the premises, commenced by the village. The amount expended by the company in fencing the premises and in payments to Courtney on his contract was over $5,000, in addition to which it bought $10,000 worth of pipes for gas mains to be used in the village in connection with its works, and had it delivered on the ground. The foregoing was all done prior to June 11, 1884, when the president and board of trustees passed an ordinance for the opening or extension of Walcott avenue, in the village, which would necessitate, if carried out, the taking of about thirty feet from the ends of the lots 1 to 7, inclusive, leaving them 110 feet in depth instead of 140 feet, their original depth, and insufficient for the erection thereon of works of the capacity required by the ordinance of August 7, 1882. The Metropolitan Gas Company of Hyde Park was made a defendant, by name, to the condemnation petition filed June 23, 1884, in the County Court, in accordance with the ordinance of June 21, 1884, and was served with process and appeared, and compensation to the amount of $14,300, including damages of the remainder of the lots and to improvements, were awarded to it by the verdict of a jury and the judgment of the court. An appeal was prayed by the village and allowed, which was, at the September term, 1888, of the Supreme Court, dismissed on a short record for want of prosecution, and nothing further has been done by the village in regard to the extension of Walcott avenue.

November 25, 1883, appellant presented to the president and board of trustees of the village, at their meeting held on that day, the following communication:

" To the President and Board of Trustees of the Village of Hyde Park."

" Your honorable body is hereby respectfully informed that it has been advised by competent counsel that the ordinance passed by your honorable body May 12, 1883, and purporting to repeal a former ordinance passed August 7, 1882, was and

is invalid, and that the Metropolitan Gas Company of Hyde Park will immediately proceed to lay gas mains and pipes in Myrtle and Lake Avenues, and other streets in the village of Hyde Park, under and in pursuance of the authority and permission granted by said ordinance passed, as aforesaid, August 7, 1882."

"T. G. SPRINGER,
"President of the Metropolitan Gas Company of Hyde Park."

This communication was referred to the judiciary committee, which committee, at the same meeting, reported, recommending that the captain of police be instructed not to allow any persons to lay pipes in the streets of the village, without first obtaining permission from the board, which report was unanimously adopted. It is admitted in the answer that the board of trustees ordered the captain of police to prevent appellant, or any one acting under it, from laying pipes in any of the streets, and the captain of police testified that he so instructed his men.

The village of Hyde Park had by ordinance passed June 21, 1871, granted to the Hyde Park Gas Company the exclusive right north of 60th street to lay its gas mains, pipes and feeders, and in May, 1883, said Hyde Park Gas Company was located and in operation and furnishing gas to Hyde Park, and had works of sufficient capacity to furnish all required. The ordinance of the village relative to permits to lay pipe is as follows:

"SEC. 1.   Any company putting in pipes shall be required to lay their street mains at a distance of not less than ten feet from the center of the street in said village, and on the south or west, or southerly or westerly sides of streets; and in all cases so that they will not interfere with sewers or water pipes, and according to any resolution of the board of trustees. In case water pipes or sewers are laid in any street, so that a compliance with the above will cause gas pipes to be placed on the same side of the street or avenue as the water pipes or sewers, then, in such case, the gas companies shall obtain special permission as to the location of said gas pipes."

Mr. Francis Adams, for appellant.

The ordinance, its acceptance by the company and the acts of the company under and in pursuance of it, constituted a contract between the village and the company which the village was powerless to repeal. Dillon on Mun. Corp., Secs. 314, 450; City of New Orleans v. Wardens, etc., 11 La. Ann. 244; City of Chicago v. Sheldon, 9 Wall. 53; City of Quincy v. Bull et al., 106 Ill. 337.

Appellee, having attempted to repeal the granting ordinance and passed an ordinance requiring the taking of part of appellant's lots, which it well knew were purchased solely for the erection thereon of gas works, with part of the improvements made by appellant, having unnecessarily delayed and protracted the condemnation proceedings, leaving appellant, during such delay, uncertain as to whether it would proceed and make the improvements or exercise its right of abandonment, and having ordered its police to forcibly prevent appellant from proceeding to lay mains and pipes, is estopped from asserting that appellant has unreasonably delayed constructing its works. City of Chicago v. C. & W. Ind. Ry. Co., 105 Ill. 73.

The answer set up contains ordinances of the village, passed respectively in 1871 and 1875, purporting to grant to the Hyde Park Gas Company permission to lay mains, pipes, etc., in the streets of the village, and contains allegations as to what that company did in the premises, and appellee's counsel introduced the ordinances in evidence. Clause 2d of section 1 of the ordinance of June 21, 1871, purports to grant to the company exclusive rights within certain described territory. The authorities are clear that a municipal corporation can not grant such exclusive right, unless expressly authorized so to do by legislative enactment. Dillon on Mun. Corp. 692, 693, 695, 696; Indianapolis v. Indianapolis Gas Co., 66 Ind. 396; Chicago v. Rumpff, 45 Ill. 90.

Appellant is not seeking to contest the right of any other corporation, and the sole question in this case is, whether appellant acquired vested rights under the ordinances of 1882, which the village of Hyde Park could not divest against ap-

pellant's will by the repeal of the ordinance or otherwise. Such being the question, and it not being insisted that the Hyde Park Gas Company has any exclusive rights under the ordinances in respect to it, I am unable to perceive that these ordinances are relevant to the issue.

Messrs. SMITH & PENCE, for appellee.

The gas company, assuming that the ordinances of June 26 and August 7, 1882, are in force, is not entitled to relief. Its works are not in readiness, and it can not furnish gas. The court will not assume that it will build and complete its plant. The proofs are that it abandoned in 1884 the thought of construction upon the lands purchased, and it has none other. The circumstances show that it is a speculative organization.

Equity will not assist a speculation, nor cause a needless thing to be done. Healy v. J. & C. R. R. Co., 94 Ill. 416.

The gas company has not shown a disposition or willingness to comply with the general ordinances. These ordinances are reasonable and not inconsistent with those of June and August, 1882. They are in force. City v. Bull, 106 Ill. 331.

The gas company should have asked a permit. In fact the prohibitory order in terms goes only to the extent of requiring a permit.

If the permit had been asked the village might have given it, and in doing so would have exercised its reserved right to designate location.

The letter presented on November 25, 1885, was a threat, not a request.

The refusal of the village was, under the circumstances, the exercise of a discretion with which courts will not interfere. Chicago v. Wright, 69 Ill. 318; Thornton v. Roll, 118 Ill. 350.

The ordinance of June 26, 1882, was void. It purports to be exclusive. The village, without power conferred by law, attempted to exercise an authority belonging to the legislature. Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683. It allowed an unreasonable time within which to commence work. In other words, it undertook to bind the village for five years, without a corresponding obligation on the part of the gas company. Garrison v. City, 7 Bissell, 480.

The same may also be said of the ordinance of August 7, 1882. Cornell v. People, 197 Ill. 372.

The ordinance of June 26, 1882, was not accepted, and was inconsistent with that of August 7, 1882.

The contract of August 3, 1882, was *ultra vires* and void. It was also inconsistent with the preceding ordinance. It was not an acceptance in intent, nor in fact; nor was it made in good faith. It appears upon its face to have been corrupt.

The ordinance of August 7, 1882, was a revocation of that of June 26th, because they are not reconcilable.

The ordinance of August 7, 1882, was not accepted, nor was any work done until May 12, 1883, the day of the repeal.

Lands were purchased in November, 1882, but nothing was done upon them until May 12, 1883. They could have been sold at any time. The ordinance was not, as regarded the village, acted upon prior to the repeal. C. C. R. W. Co. v. People, 73 Ill. 341; M. C. R. W. Co. v. C. W. D. R. W. Co., 87 Ill. 317; City v. Bull, 106 Ill. 331.

The contract between Bradley, Torrence and Springer, to which the gas company was not a party and by which it was not bound, was, as regards the relations between the village and gas company, of no moment. The repeal was, therefore, a revocation which was within the power of the village.

MORAN, J. Appellee takes the position in its answer that appellant had no authority whatever to lay gas pipes or mains in the streets of the village, and admits that, after the receipt by the authorities of the communication from appellant that it would immediately proceed to lay gas mains and pipes in Myrtle and Lake avenues and other streets, the president and board of trustees ordered the captain of police to prevent appellant, or any person acting for it, to lay gas pipes or mains in any part of the streets. That being the position of the village authorities, it was wholly unnecessary for the gas company to make an actual attempt to lay pipe in some street before applying to the court to restrain the officers from forcibly preventing the operations of the company.

The threat to use force will justify the interference of the

court if the complainant is otherwise entitled to the relief, and particularly is this so when, in the answer, the legal right of the complainant is denied and the intention·to use force to prevent the accomplishment of the act is admitted.

The suggestion by counsel for appellee that complainant should have applied for a permit is not tenable, for the reason that the answer and proof shows that no permit would be granted, as the village authorities denied complainant's legal right, and for the further reason that the conditions are not shown to have been in existence, which made it necessary for the company to have a special permit under the ordinance of the village.

The propriety of the action of the court below in refusing the relief sought by the bill depends on the question whether there was a valid ordinance which had been passed by the village and accepted by appellant, and which thus became a binding contract between appellee and appellant before the repealing ordinance of May 12, 1883, was passed by the village board.

We are disposed, in the determination of this question, to confine ourselves to the consideration of the ordinance of August 7, 1882. The only objection to the validity of this ordinance is that it gave complainants the period of five years in which to commence the erection of gas works. If the provisions of the ordinance relating to the time within which the operations of the company were to be commenced were treated as invalid, the remaining provisions of the ordinance would stand as they are, not connected with or dependent upon the time clause. The company would be forced to accept the ordinance and act under it within a reasonable time. The ordinance then as passed must be held to have been a valid grant to the company to lay gas pipes and mains in the streets of the village and to furnish gas to the inhabitants, and the remaining question is whether said ordinance was accepted and acted upon by the appellant within a reasonable time.

It appears from the record that within four months from the passage of the ordinance appellant, through its officers, procured a person who had experience in the construction and operation of gas works, to examine certain real estate in the

village, in order to determine its suitability as a location for such gas works as appellant was required to erect; and that upon said expert reporting favorably as to said real estate, the same was purchased by appellant for the sum of $10,800, and the title to the same vested in appellants by a sufficient deed.

On May 1, 1883, and within nine months after the passage of said ordinance, Bradley and Torrence, who were promoters, stockholders and officers of the appellant company, made in their own names, with Springer, a contract for the erection and equipment of gas works upon the land so purchased and held by appellant; said works to be ready to furnish gas within six months from the date of said contract, and the works, when so completed, to be turned over to the appellant. As consideration to Springer, Bradley and Torrence assigned to him all their interests in the capital stock of the appellant company, and in and to its property and franchises, and authorized him to issue bonds of the company secured by trust deed upon its property, and, after said bonds were issued, Springer was to re-assign to said Bradley and Torrence one-third of the capital stock of the said company.

On May 12th the village was notified of the purchase of said land by appellant, and of the making of said contract, and that such acts had been done under and in view of said ordinance.

Did those acts, done, as we are bound to believe from the evidence they were done, in good faith, constitute a sufficient acceptance by the appellant of said ordinance, so as to bind the company and create an obligation to erect gas works and furnish the inhabitants of the village with gas?

There does not appear to have been any formal acceptance of the ordinance at the meeting of the board of directors of the company, but while such an acceptance would probably be sufficient, yet that the ordinance was so accepted need not be shown, as acts done upon the faith of the ordinance, which are in furtherance of its purposes and induced by it, and which are known to the village or city granting the ordinance to have been done in pursuance and by virtue of the ordinance, will amount to a binding acceptance without any formal ac-

ceptance by the managing board of the company. Acts which will constitute such acceptance must not be such as are merely equivocal in character, but there must be such acts as, given their fair import and interpretation, can be said to be done in furtherance of the purpose of the act.

Thus, it was held by the Supreme Court of Indiana, it was evidence of the acceptance of a railroad charter passed by the legislature in January, 1849, that in October, 1851, a meeting was held by a majority of the corporators named, when they determined to build the contemplated railroad under the charter. State v. Dawson, 22 Ind. 272.

We are of opinion that the purchase by appellant of land on which to erect its works after the passage of the ordinance, and the contract made for the benefit of appellant by persons who had invested a considerable sum for the promotion of the enterprise and who were stockholders of appellant, for the erection of gas houses and apparatus for appellant, were acts of an unequivocal character, done in pursuance of the object and purpose of the ordinance, and that when appellee had notice of those acts and the intent and purpose for which they were done, it became too late for appellee to repeal the ordinance, and that the same was and continues to be a valid and binding contract between the appellant and the village of Hyde Park.

The suggestion by counsel for appellee that the land which appellant purchased could be sold again, and therefore the purchase of it was not acting upon the ordinance as regarded the village, might be said of any act which the company could perform short of the actual laying of its pipe in the streets. A building erected by the company could, after its erection, be put to other uses than the manufacture of gas, and excavations made in the streets for pipe might be filled up again and no pipe be placed therein. The land might be purchased and the building erected and the pipe laid as a sham and a pretense, it is true; but, if such acts were done in good faith, it is difficult to perceive why they would not be sufficient acceptance of such an ordinance as this when brought to the notice of the village.

Such acts should be regarded as done in good faith under the ordinance when the officers of the company so swear and there is no evidence to indicate the contrary.

The ordinance having been accepted before the repeal of May 12, 1883, constituted a binding contract between appellant and the village, and the village was therefore powerless to set it aside, and the attempted repeal was futile and without legal operation. City of Quincy v. Ball et al., 106 Ill. 337; City of Burlington v. Burlington Street Ry. Co., 49 Ia. 144; Railway Co. v. Village of Carthage, 36 Ohio St. 631.

The fact that the village had, by ordinance, granted exclusive privileges to the Hyde Park Gas Company, and that said company have works in operation and can supply the wants of the village, can have no influence on the result of this case. The interests of the village, or the inhabitants thereof, are not likely to be injured by permitting two gas companies to distribute gas instead of one, and it is even possible that some advantage may come to the users of gas by allowing the competition.

We are of the opinion that the court erred in refusing the injunction prayed for, and the decree must be reversed and the cause remanded, with direction to allow the injunction in accordance with the prayer of the bill.

*Reversed and remanded.*