SARAH J. BARROWS

*v.*

THE CITY OF SYCAMORE.

*Filed at Ottawa June 19, 1894.*

1. STREETS—*uses to which they may be appropriated.* The general rule long recognized by this court is, that, having the free and exclusive control over streets, municipal authorities may appropriate them to any use not incompatible with the object for which they were established.

2. In the application of the rule it has been held that a city council may lawfully authorize the laying of railroad tracks upon, and water, sewage and gas pipes under, public streets, and that property owners could neither enjoin such use, nor recover damages to property occasioned thereby.

3. Laying pipes under the streets for the purpose of distributing water and gas and to carry off sewage, is lawful, both because it is necessary for the health, comfort and convenience of the inhabitants, and because it in no way interferes and is not incompatible with the use of such streets for public travel; yet it can not be contended that the water or gas works themselves could be lawfully built in a public street, as not being inconsistent with the public use.

4. SAME—*liability of city for obstructing.* A city has no right to so obstruct public streets as to deprive the public and adjacent property holders of their use, as such. Their primary object is for ordinary passage and travel, and the public and individuals can not be rightfully deprived of such use.

5. SAME—*erection of stand-pipe in street.* The erection of a stand-pipe or water works in a public street, near the buildings along the street, is an unlawful use of such street, and the manner of operating the structure, or its dimensions, affect only the question of damage to property holders.

6. SAME—*who may complain of obstructions.* It is well settled that for obstructions to streets, resulting in no special injury to an individual, the public alone can complain. There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law affords no relief, as, for instance, the building of a jail, police station, or the like, near private property.

7. If an obstruction in a street does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained a special damage with respect of his property, in excess of that sustained by the public generally.

8. In the absence of any statutory or constitutional provision on the subject, the common law affords redress in all such cases, and it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law. Where the action is by an individual, the special injury is the gist of the action, and unless it is alleged and proved there can be no recovery.

9. PLEADING—*action by lot owner against village for placing a stand-pipe in the street.* In an action by a lot holder against a village, for an injury to his property by the erection of a stand-pipe in the street, certain counts of the declaration alleged that the plaintiff's property had been depreciated in value because of the danger of the building being destroyed or damaged by the stand-pipe falling or being blown upon it, or by bursting and flooding with water, but no fact was alleged upon which the apprehension of such damages could be based : *Held,* that such counts failed to show a cause of action.

10. Another count alleged that "said stand-pipe obstructs the light to said plaintiff's hotel building, and particularly to the parlor and sitting-room in the south-west corner," etc.: *Held,* that this was a sufficient allegation of special injury to entitle the plaintiff to recover of the village. The extent of the injury is a question of fact, to be determined upon plea and trial.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. JONES & ROGERS, for the appellant.

Messrs. CARNES & DUNTON, for the appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the Court :

This is an action on the case, by appellant, against appellee, in the circuit court of DeKalb county, to recover damages for an alleged injury to real property. The circuit court sustained a demurrer to the declaration and rendered judgment against the plaintiff for costs, from which she appealed to the Appellate Court for the Second District, and from a judgment of affirmance in that court she prosecutes this appeal.

The cause of action set up in the declaration is, that plaintiff is the owner of a certain lot in the city of Sycamore, with a two-story building on the south-west corner thereof, fronting south and west, on State and Main streets, which she used and occupied as a residence and hotel; that the city "injuriously, unjustly and wrongfully constructed, or caused to be constructed and erected, at or near the center of the intersection of said streets, and at a distance of about fifty-six and one-half feet from said hotel building, a stand-pipe or water tower" fifteen feet in diameter and about one hundred and thirty-five feet high, having a capacity of 179,000 gallons, made of steel or iron plates five feet wide, riveted together, the lower course being nine-sixteenths of an inch thick, and those above diminishing to the upper course, which was three-sixteenths of an inch. This structure is alleged to have caused an injury to plaintiff's building, which is set forth in each of the four counts of the declaration, as follows :

First count : "Which stand-pipe, by reason of the fact that there is a constant apprehension that it may fall over upon said hotel building, and by its great weight injure, crush or

destroy the same, or that it might blow over upon said property, or burst and flood the same, greatly depreciates in value the premises for resident, hotel and business purposes, and especially greatly depreciates in price the market value of said premises."

Second count: "Which stand-pipe is liable to fall or blow over upon said premises, and by its great weight injure, crush or destroy said hotel building, and is liable to burst and flood said premises, and thus injure the same or destroy the said hotel building, and thereby greatly depreciates in value said premises," etc.

Third count: "Which stand-pipe is of a dangerous character, and is liable to fall or blow over upon said hotel building, and by its great weight injure, crush or destroy the same, and is liable to burst and flood said premises, and thus injure the same or destroy the said hotel building, and the stand-pipe is a constant menace to plaintiff's property, and the liability of said structure, and structures of like character, to fall or blow over or burst, has thereby greatly depreciated in value said premises for resident, hotel or other business purposes, and especially greatly depreciates in price the market value of said premises."

Fourth count: "And by reason of defendant constructing, or causing to be constructed, said stand-pipe, as above stated, in the public streets of said city, and so near to plaintiff's hotel building, said stand-pipe obstructs the light to said plaintiff's hotel building, and particularly to the parlor and sitting-room in the south-west corner of said hotel building, and obstructs the view from said hotel building; and said stand-pipe being of so great height, and in front of and near said plaintiff's said premises, casts a shadow upon said hotel building, and makes the appearance of said premises unsightly and otherwise injuriously affects said premises, and thus plaintiff's said premises are less convenient and comfortable for resident and hotel purposes; and by reason of the

wrongful acts and doings of the defendant, as aforesaid, and the injuries done to plaintiff's property, as aforesaid, the market value of plaintiff's said premises is thereby greatly decreased."

Each of these counts concludes with the averment, "that by means of the premises the said defendant has greatly injured and damaged the said property of plaintiff, within the meaning of the constitution and laws of the State of Illinois, yet the said defendant has never paid, nor offered to pay, to the said plaintiff any of the damage so injuriously and unjustly caused to the plaintiff's said property, nor has any proceeding been instituted by the defendant for the purpose of having just compensation therefor ascertained; and the plaintiff avers, that by reason of the premises above set forth the plaintiff's said property has been greatly damaged and depreciated in value, to the damage of said plaintiff of the sum of three thousand ($3000), and therefore she brings her suit," etc.

It thus appears that the declaration proceeds both upon the ground that placing the stand-pipe in the street was wrongful, and, even if authorized by law, plaintiff's property could not, under the constitution, be damaged thereby without just compensation, which had not been ascertained. The demurrer was, in effect, general to each count, viz., it made no objection to the declaration on account of duplicity, or the mere form of pleading, and therefore the only question presented for our decision is, does either of the counts state, in substance, a good cause of action.

It is insisted on behalf of the city, that being the owner of the fee in the streets, and having the absolute control over them, it had a right to build the stand-pipe in them, and that if injury resulted thereby to plaintiff's property it is *damnum absque injuria*. The soundness of this position depends upon whether the placing of a structure, like that described in the declaration, in the streets of a city, is consistent with the objects for which streets are established and held by municipal authorities in trust for the public use. The general rule long

recognized by this court is, that, having the fee and exclusive control over streets, municipal authorities may appropriate them to any use not incompatible with the object for which they were established. (*City of Quincy* v. *Bull et al.* 106 Ill. 337, and cases there cited). In the application of the rule it has been held in the case cited, and others, that a city council may lawfully authorize the laying of railroad tracks upon, and water, sewer and gas pipes under, public streets, and that property owners could neither enjoin such use, nor recover damages to property occasioned thereby. Laying pipes under the streets for the purpose of distributing water and gas and carrying off sewage, is lawful, both because it is necessary for the health, comfort and convenience of the inhabitants, and because it in no way interferes with and is not incompatible with the use of such streets for public travel. Railroad tracks may be lawfully laid in streets, for the reason, as stated in the *Moses case*, cited in *Quincy* v. *Bull, supra,* "a street is made for the passage of persons and property, and the law can not define what exclusive means of transportation and passage shall be used." It was, however, held in *Stack* v. *City of St. Louis*, 85 Ill. 377, and cases cited to the same effect in *Legare* v. *City of Chicago*, 139 Ill. 46, that in permitting the use of streets for other purposes than public thoroughfares, "the city has no right to so obstruct them as to deprive the public and adjacent property holders of their use as streets. The primary object is for ordinary passage and travel, and the public and individuals can not be rightfully deprived of such use."

It does not follow, therefore, that because railroad tracks may be put on or pipes under the streets, structures like the one described in this declaration can be built in them. Water and gas pipes, with hydrants, lamp-posts and other appliances, are necessary for the distribution of water and light over the city, and the streets may be legitimately used for that purpose; but it would scarcely be contended that the

water or gas works themselves could be lawfully built in a public street, as not being inconsistent with the public use. In fact, directly the contrary was held in *City of Morrison* v. *Hinkson*, 87 Ill. 587, as to water works. It was there said: "But it is not conceded that the erection of a water tank in the center of the street, occupying one-half of the width thereof, and the erection and operating of a steam engine in connection therewith, even for the purposes of supplying the city and the residents thereof with water, is one of the uses of a street, as such, for which the ground may be appropriately used under a dedication thereof as a street. The owner of a lot adjoining a street does not take the same subject to any such easement." It is true, it was stated in that case that the proof did not show in whom the fee of the street was vested; but if the same could not be said here, there being no allegation in the declaration as to that fact, still, as shown by *Stack* v. *East St. Louis, supra*, and cases there referred to, the fact that the title is in the city gives it no right to pervert its use as a street. The fee simple title, though in the city, is held in trust for the public use, as a street. Nor do we regard the fact that the tank in *City of Morrison* v. *Hinkson* occupied more of the street, and was filled by machinery immediately attached, also in the street, distinguishes that case in principle from this. A stand-pipe is but a part of the machinery and appliances with which water is forced into the pipes throughout the city. There is no necessity for placing it in a public street, and, so far as appears in this case, neither the health, comfort nor convenience of the public or individual citizens is promoted by so doing. Therefore, placing it there was an unlawful use of the street, and the dimensions of the structure, and the manner of operating it, in the decision of this case, affect only the question of damages, to be hereafter considered.

Our opinion then is, that the allegations of the declaration admitted by the demurrer show that the city wrongfully placed

the structure in its streets. It does not, however, follow, that a good cause of action in the plaintiff is shown by her declaration. It is well settled, that for obstructions to streets, resulting in no special injury to an individual, the public alone can complain. (*McDonald* v. *English,* 85 Ill. 232; *City of Morrison* v. *Hinkson, supra.*) The individual right, under our present constitution, is thus stated in *Rigney* v. *City of Chicago,* 102 Ill. 80: "While it is clear that the present constitution intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So, as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law. When the action is by an individual, the special injury is the

*gist* of the action, and unless it is alleged and proved there can be no recovery." *McDonald* v. *English, supra.*

Under this rule it is too clear for argument that neither of the first three counts of the declaration shows a right of action in the plaintiff. The special injury attempted to be set up in each of these counts is, that her property has been depreciated in value because of the danger of the building being destroyed or damaged by the stand-pipe falling or being blown upon it, or by bursting and flooding it with water, but not a single fact is alleged upon which the apprehension of such danger can be based. In the first count nothing but the apprehension itself is alleged, and in the second and third, merely that it (the stand-pipe) is *liable* to fall, blow over or burst. Why the apprehension exists, or why it is liable to fall, etc., is left wholly to conjecture. It certainly will not be contended that the manner in which it is constructed, as shown by the dec-claration, necessarily renders it dangerous. No one will deny that such a structure could be rendered reasonably secure by proper stays and braces, though it might not be so without. True, as in the instances referred to by counsel for appellee, water towers and stand-pipes have fallen or been destroyed; but the same is true of buildings of every kind,—perhaps of all superstructures. If this one is liable to fall, blow down or burst, that liability must arise from certain facts, and those facts must be pleaded. Here we have nothing but the mere conclusion of the pleader.

The fourth count avers that "said stand-pipe obstructs the light to said plaintiff's hotel building, and particularly to the parlor and sitting-room in the south-west corner," etc. We are unable to see why this is not a sufficient allegation of special injury to plaintiff's property to entitle her to recover. (*Rigney* v. *City of Chicago, supra.*) The extent of the injury is a question of fact, to be determined upon plea and trial.

We think the circuit court erred in sustaining the demurrer to the fourth count.                    *Judgment reversed.*