(No. 47487.-

EARL GEORGE CAMMERS *et al.*, Appellees, v. MARION CABLEVISION, a Division of Cable Information Systems, Inc., Appellant.

*Opinion filed May 28, 1976.—Rehearing denied Sept. 30, 1976.*

RYAN and KLUCZYNSKI, JJ., dissenting.

Norbert C. Garrison, of Garrison & Garrison, of Marion, for appellants.

James W. Sanders, of Marion, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Earl George Cammers and Lillian Cammers, who are the owners of a 30-acre tract of land in Williamson County, brought an action in the circuit court for a mandatory injunction requiring the defendant, Marion Cablevision, to remove a 3/4-inch underground television cable and an aboveground television cable box which the plaintiffs alleged had been installed on their land without their consent. The plaintiffs also prayed that they be awarded actual and punitive damages.

The circuit court found that the defendant's television cable line and cable box encroached on the plaintiffs' property, granted the mandatory injunction, and continued the cause for a determination of damages. On appeal by the defendant, the Appellate Court for the Fifth District, although agreeing with the trial court's determination that the defendant had committed a trespass, concluded that the remedy of a mandatory injunction was not appropriate. The appellate court accordingly reversed that portion of the judgment which granted the injunction, and remanded the cause for the purpose of ascertaining damages. (26 Ill. App. 3d 176.) We granted the plaintiffs' petition for leave to appeal.

The south boundary of the plaintiffs' property is the south line of a quarter section. A public highway, which apparently exists by prescription, runs along that south boundary. The highway does not run in a true east-west direction; its direction is generally southwest to northeast. The road is surfaced and is drained by ditches.

The defendant admits that it laid its cable along a line to the north of the north edge of the surfaced portion of this road. That north edge intersects the plaintiffs' south property line at a point approximately 440 feet east of the southwest corner of the tract. To the west of this point of intersection the north edge of the road lies from one to

five feet south of the plaintiffs' property line. To the east of the point of intersection, the north edge of the surfaced portion of the road extends over the property line onto the plaintiffs' land for distances increasing progressively from one foot to slightly over 11 feet at the southeast corner of the tract. A plat of survey also shows a line of power poles running parallel to and slightly north of the south property line. The record is silent as to the ownership of these poles or the circumstances under which they were erected.

The cable, which was installed at a depth of from two to three feet, runs the full length of the plaintiffs' property. So far as that portion of the cable—about 900 feet in length—lying to the east of the point where the north edge of the road intersects the property line is concerned, all of the cable must necessarily lie on the plaintiffs' property. Moreover, the defendant admits that in connection with the cable installation, it also placed a pedestal-shaped television box aboveground at a point located 11½ feet north of the plaintiffs' property line.

The surveyor who prepared a plat of survey for the plaintiffs did not run his survey until 1974, after this action had been filed and long after the installation of the cable, which took place in 1970. He testified that he plotted a line purporting to show the location of the cable from a line of markers on the surface of the ground which his survey crew had observed being placed by men working out of a truck bearing the sign "Cablevision." He testified further that he believed that the markers had been inserted in order to identify the route of the cable. An objection to the competency of this testimony was overruled by the trial court, and the defendant introduced no evidence of its own to rebut the surveyor's testimony.

The defendant's answer to the plaintiffs' interrogatories stated that before the cable was laid measurements were made to determine that it would be laid within the highway easement, and the plaintiffs' surveyor testified

that the south line of the plaintiffs' land "lies within the highway right-of-way, if you include the right-of-way to mean the surfacing, the side ditches and the back slopes." A drainage ditch essential to make a highway easement effective, if maintained and used by the public, is of course included within a prescriptive highway easement. (*City of Highland Park v. Driscoll* (1962), 24 Ill.2d 281.) We think, therefore, that the evidence was sufficient to show that the cable box, and the indicated portion of the underground cable, are located on that point of the plaintiffs' land which is subject to the highway easement.

Prior to laying its cable, the defendant obtained a letter from the county superintendent of highways of Williamson County giving the defendant a general authorization to "install, maintain, repair, replace, renew and remove cable for television service along, across and upon County and Unit Road District Highways of the County of Williamson."

The defendant maintains that the issuance of this permit constituted a complete defense to the plaintiffs' action. We do not agree. The letter was apparently issued pursuant to section 9—113 of the Illinois Highway Code of 1959 (Ill. Rev. Stat. 1973, ch. 121, par. 9—113). Paragraphs one and two of that section provide as follows:

"No ditches, drains, track, rails, poles, wires, pipe line or other equipment of any public utility company, municipal corporation or other public or private corporation, association or person shall be located, placed or constructed upon or along any highway, or any township or district road, other than a highway or road within a municipality without first obtaining the written consent of the appropriate highway authority as hereinafter provided for in this Section.

Upon receipt of a petition therefor, consent to so use a highway may be granted subject to such terms and conditions not inconsistent with this Code as the highway authority deems for the best interest of the public. The petitioner shall pay to the owners of property abutting upon the affected highways established as though by

common law plat all damages the owners may sustain by reason of such use of the highway, such damages to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain."

While section 9—113 requires a corporation installing equipment in a right-of-way to obtain the written consent of the superintendent of highways, that consent does not relieve such a corporation from liability for whatever damages are suffered by abutting owners. The appellate court was therefore correct in remanding the cause for a determination of damages.

We believe that the appellate court was also correct in holding that a sufficient showing was not made to warrant the issuance of a mandatory injunction. It is true that as between adjacent parcels of private property, where no public easement is involved, a mandatory injunction may properly issue against a landowner to compel removal of a building which encroaches on his neighbor's land in such a manner as to deprive the latter of its use, even though the encroachment may be slight. *Nitterauer v. Pulley* (1948), 401 Ill. 494; *Ariola v. Nigro* (1959), 16 Ill.2d 46.

The present case presents a significantly different aspect, however. With the exception of the cable box, the installation is two to three feet underground, and, as the defendant points out, the plaintiffs have failed to show any present or even prospective use of their unimproved tract which would be damaged by the cable installation. Nor is it contended that the installation interferes in any way with the use of the highway for travel. As for the cable box, a photograph introduced into evidence by the plaintiffs shows that the box is situated immediately adjacent to one of the line of power poles which already stretches along the entire south end of the plaintiff's property.

We are of the opinion, moreover, that a mandatory injunction is ordinarily inappropriate where the alleged encroachment lies within a highway right-of-way. The

construction of telegraph or telephone poles and wires along a highway has been held to constitute an additional servitude, entitling one who owns property abutting on the highway and who also owns the land beneath it to maintain an action of ejectment or to enjoin the construction. (*Postal Telegraph-Cable Co. v. Eaton* (1897), 170 Ill. 513; *DeKalb County Telephone Co. v. Dutton* (1907), 228 Ill. 178; *cf. Moore v. Gar Creek Drainage District* (1915), 266 Ill. 399.) But as the defendant points out, underground installations which are for the benefit of the public at large and which do not impair the use of the highway have been regarded as falling within the highway easement. (*Barrows v. City of Sycamore* (1894), 150 Ill. 588, 593.) The defendant is not a public utility (*Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill.2d 205), however, and its cable television operations benefit the defendant and its customers, rather than the general public. The reasoning of the *Barrows* case is thus not directly applicable.

The cases mentioned above were decided without reference to section 9—113, and we think that that section, in providing that abutting owners are to be compensated for damages discloses a legislative policy against the issuance of a mandatory injunction in a case such as this. The section proceeds on the theory that persons in the position of the present plaintiffs have already lost or have given up the use of the surface of the right-of-way and will ordinarily not be irreparably injured by the types of uses enumerated in the section.

We recognize that the damages to the plaintiffs remain to be ascertained upon the remand, and nothing we say here is intended to foreclose the presentation of evidence on that issue. We hold only that no showing of irreparable injury warranting the issuance of a mandatory injunction has been made. (*Cf. Beloit Foundry Co. v. Ryan* (1963), 28 Ill.2d 379.) In our view the plaintiffs' future rights will

be adequately protected by an adjudication that the defendant has encroached on the plaintiffs' land and an award of any damage the plaintiffs may have sustained.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN, dissenting:

The majority opinion acknowledges that the defendant is not a public utility and that its cable television operations benefit the defendant and its customers rather than the general public. The practical effect of the court's opinion then is to condone the existence of a private right of eminent domain allowing the defendant to take the private property of the plaintiffs for the *private use* of the defendant and its customers. This court has long held that "private property cannot be condemned for a purely private purpose or for a private use which benefits the public only incidentally." (*Department of Public Works and Buildings v. Farina* (1963), 29 Ill.2d 474, 477.) Further, "[a]ny attempt to grant the right to take private property for private use is void." (*People ex rel. Tuohy v. City of Chicago* (1946), 394 Ill. 477, 481.) Consequently, I must dissent.

The majority opinion cites *Barrows v. City of Sycamore* (1894), 150 Ill. 588. That case is not authority for the statement in the opinion that "underground installations *** have been regarded as falling within the highway easement," since in that case no "easement" was involved. The city of Sycamore owned the fee in the street and *"having the fee and exclusive control over streets,* municipal authorities may appropriate them to any use not incompatible with the object for which they were established." (Emphasis added.) (*Barrows v. City of Sycamore* (1894), 150 Ill. 588, 593.) In the case before us it is uncontroverted that the road exists by prescription. The public therefore has only an easement for highway

purposes over the land of the plaintiffs. The plaintiffs retain the fee and can exercise every right of ownership not inconsistent with the public easement. *Moore v. Gar Creek Drainage District* (1914), 266 Ill. 399.

As the majority points out, the cases it cites were decided without reference to section 9—113 of the Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 9—113). However, these cases were pre-1915, and the Illinois Highway Code did not become effective until 1959. Prior to that time provisions similar to those found in section 9—113 were contained in other statutes.

One of the cases cited referred to a statute which was analogous to section 9—113 in that it allowed local authorities to consent to a telegraph company's erection of poles, posts, piers, abutments, wires, etc. on private property. In *Postal Telegraph-Cable Co. v. Eaton* (1897), 170 Ill. 513, 515, this court stated:

"It is not denied that a telegraph company organized under the laws of this State may, under our Eminent Domain act, acquire property upon which it may erect its telegraph line. Indeed, section 2 of the act relating to telegraph companies (Rev. Stat. 1874, p. 1052,) makes provision for such companies to acquire property, as follows: 'Every such company may enter upon any lands for the purpose of making surveys and examinations with a view to the erection of any telegraph line, and take and damage private property for the erection and maintenance of such lines, and may, subject to the provisions contained in this act, construct lines of telegraph along and upon any railroad, road, highway, street or alley ***.' Section 4 of the same act provides: 'No such company shall have the right to erect any poles, posts, piers, abutments, wires or other fixtures of their lines *along or upon any road, highway or public ground* outside the

corporate limits of a city, town or village without *the consent of the county board of the county in which such road, highway or public ground is situated,* nor upon any street, alley or other highway or public ground within any incorporated city, town or village without *the consent of the corporate authorities of such city, town or village.'* " (Emphasis added.)

Section 2 of the 1874 act quoted above authorized the exercise of eminent domain powers by telegraph companies. Section 4 then proceeded to place a restriction on that authority. Even after a telegraph company exercised its condemnation powers, or obtained the consent of the landowner for the placement of its poles and wires, it still had to obtain the consent of local authorities to place its poles and wires along the public highway.

The power of eminent domain has been granted to telegraph and telephone companies (Ill. Rev. Stat. 1973, ch. 134, pars. 2, 20); to railroad companies (Ill. Rev. Stat. 1973, ch. 114, par. 18); and to public utilities generally (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 63). Since the State has already granted full eminent domain powers to public utilities, any construction of section 9—113 which would confer additional condemnation powers would be redundant and unnecessary. Section 9—113 is part of the Illinois Highway Code. The section is neither a substitute for nor an alternate to the statutory exercise of eminent domain powers by public utilities. It simply affirms the authority of local highway officials to preserve and safeguard the public's highway easement.

If, in this case, the highway authorities had felt that location of the underground cable might interfere with, for example, emergency parking facilities, the authorities could have withheld consent until defendant agreed to locate the cable further from the roadway. If a telephone company had condemned land adjoining a highway, the highway authorities could still have withheld consent to

the placement of telephone poles until they were satisfied that the poles would not be a hazard to motorists. And if a landowner wished, for example, to lay sanitary sewer pipes on land which he owned in fee, but which was subject to the highway easement, he would have to obtain the consent of highway authorities under section 9—113. Even though he owns the land, his use of it is subject to the right of the public to unobstructed use of the highway easement. The effect of section 9—113 is to ensure that no one—whether an abutting landowner, a public utility, or a private company acting with permission of the landowner —will interfere with the public's highway easement.

In summary, section 9—113 does not confer upon the persons and entities named a means of acquiring a right to burden land which is subject to a highway easement. It merely provides that, in order to protect the public's unobstructed use of its highway easement, the named highway officials must consent to the placement of any poles, wires, ditches, etc. within the highway easement. The fact that section 9—113 requires that the owners of the property abutting upon the highway be compensated for damages does not grant a right of eminent domain to acquire the right to use the property.

While the majority opinion requires that plaintiffs be compensated for the taking of their property, it fails to provide for the first step in the eminent domain process— an adversary hearing and a judicial determination of the propriety of the taking. If a pretaking hearing had been required in this case, the judge, faced with the attempted taking of private property for private use, would have had to find in favor of the landowner. The result should not be different when the defendants, acting without notice to the plaintiffs and without allowing plaintiffs a hearing, arbitrarily confiscated plaintiffs' property.

The majority feels that section 9—113 "in providing that abutting owners are to be compensated for damages discloses a legislative policy against the issuance of a

mandatory injunction in a case such as this." The mere payment of money damages *after* the taking cannot compensate for depriving plaintiffs of their right to notice and a pretaking hearing. The action of the defendants was a trespass. It deprived plaintiffs of their property without due process and without compliance with the constitutional and statutory requisites for eminent domain. A "legislative policy" cannot cure a constitutional infirmity in the statute and in the procedure followed by defendants here.

In cases markedly similar to the case at bar, this court has allowed actions of ejectment and injunction against telegraph companies and railroads. It will be noted in the part of the opinion in *Postal Telegraph-Cable Co. v. Eaton* (1897), 170 Ill. 513, quoted above that, in addition to section 4 of the act then in force, which required consent of the local authorities before telegraph lines could be erected upon or along a highway, the act, in section 2, also conferred the right of eminent domain upon telegraph companies. In the case now before us, although the act involved requires similar consent, no power of eminent domain is conferred. However, in *Postal Telegraph-Cable Co. v. Eaton,* this court stated:

> "When appellant, therefore, entered upon and took possession of the land and erected its line without instituting proceedings to condemn, as required by law, it was a trespasser, and no reason appears why appellee might not sue in trespass and recover such damages as he had sustained, or bring ejectment and regain his property in the condition it was in when appellant entered upon it." (170 Ill. 513, 519.)

Thus, the consent of the highway authorities confers no right upon the company to burden the land of the owner. That right must first be obtained by condemnation or grant.

In *Spalding v. Macomb and Western Illinois Ry. Co.* (1907), 225 Ill. 585, 590, this court stated:

"[T]he construction of a steam railway in a city street, where the fee belongs to abutting property owners, has been frequently held by this court to create an additional servitude as not one of the ordinary uses. The owner of the abutting property may maintain trespass, or may enjoin said railroad from constructing or operating without first settling with the owner of the fee, even though the municipal authorities have granted, by an ordinance based on a legal frontage petition, permission to construct and operate a railroad on said street."

This court has held that "an injunction is proper to prevent an unlawful appropriation of land by a public corporation which has made no attempt to acquire such rights by condemnation or other lawful procedure." (*Illinois Cities Water Co. v. City of Mt. Vernon* (1957), 11 Ill.2d 547, 556.) Similarly, a mandatory injunction should issue to correct an unlawful appropriation of land by a private corporation. I would reverse.

MR. JUSTICE KLUCZYNSKI joins in this dissent.