KITTY LEWIS, Plaintiff-Appellee, *v.* ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellant.

Fourth District   No. 16950

Opinion filed August 7, 1981.

Alfred B. LaBarre, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellant.

Nolan Lipsky, of Petersburg, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

The defendant appeals from a judgment of the circuit court of Menard County entered pursuant to section 13 of "An Act in regard to forcible entry and detainer" (Ill. Rev. Stat. 1979, ch. 57, par. 13). The judgment awarded possession of the premises to plaintiff.

Plaintiff owned the fee simple title to the premises which were a strip of land 55 feet wide and 3,960 long and constituted the westerly portion of a larger tract. The strip had been dedicated as an easement for highway purposes some years earlier by the plaintiff and a rural public highway existed thereon.

Defendant entered into negotiations with the plaintiff for permission to lay underground telephone cable in the highway easement but these negotiations came to naught. Notwithstanding, defendant proceeded to lay the cable in the easement commencing in May 1980, and ending about July 1980. The forcible entry and detainer suit followed in November 1980.

■■ "A telephone line in a public highway is an additional burden upon the fee, for which the owner of the fee is entitled to compensation." (*Burrall v. American Telephone & Telegraph Co.* (1906), 224 Ill. 266, 268, 79 N.E. 705.) Defendant does not dispute this principle of law and has maintained that it stands ready at all times to pay compensation to plaintiff. The parties diverge in their opinions as to how much compensation should be paid.

Defendant relies on section 9—113 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 9—113) and its application in *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 354 N.E.2d 353. That statutory section is read as follows:

"§9—113. No ditches, drains, track, rails, poles, wires, pipe line

or other equipment of any public utility company, municipal corporation or other public or private corporation, association or person shall be located, placed or constructed upon or along any highway, or upon any township or district road, other than a highway or road within a municipality without first obtaining the written consent of the appropriate highway authority as hereinafter provided for in this Section.

Upon receipt of a petition therefor, consent to so use a highway may be granted subject to such terms and conditions not inconsistent with this Code as the highway authority deems for the best interest of the public. The petitioner shall pay to the owners of property abutting upon the affected highways established as though by common law plat all damages the owners may sustain by reason of such use of the highway, such damages to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain.

Such consent shall be granted by the Department in the case of a State highway; by the county board in the case of a county highway; by either the highway commissioner or the county superintendent of highways in the case of a township or district road, provided that if consent is granted by the highway commissioner, the petition shall be filed with the commissioner at least 30 days prior to the proposed date of the beginning of construction, and that if written consent is not given by the commissioner within 30 days after receipt of the petition, the applicant may make written application to the county superintendent of highways for consent to the construction. This Section does not vitiate, extend or otherwise affect any consent granted in accordance with law prior to the effective date of this Code to so use any highway." Ill. Rev. Stat. 1979, ch. 121, par. 9—113.

Evidence was presented by defendant of permits obtained from the Illinois Department of Transportation, but in view of our disposition of this case, we deem those irrelevant and need not discuss their effectiveness.

In *Cammers*, the plaintiff sought a mandatory injunction and damages against the defendant for placing a television cable over his premises without permission. The defendant relied upon section 9—113 and a letter from a county superintendent of highways granting permission to lay the cable in the county highways. The supreme court held that injunction was not the proper remedy and said:

"While section 9—113 requires a corporation installing equipment in a right-of-way to obtain the written consent of the superintendent of highways, that consent does not relieve such a

corporation from liability for whatever damages are suffered by abutting owners. The appellate court was therefore correct in remanding the cause for a determination of damages." 64 Ill. 2d 97, 102, 354 N.E.2d 353, 355.

Mr. Justice Ryan, dissenting, indicated that he was apprehensive that the majority opinion delegated *sub silentio* the power of eminent domain to a private corporation. Defendant Illinois Bell here adopts the inference and maintains that so long as damages are paid, the matter is concluded without reference to eminent domain.

We do not read the majority opinion in *Cammers* quite so broadly. ■■ ■ It is significant that neither the supreme court opinion nor the antecedent appellate court opinion (26 Ill. App. 3d 176, 325 N.E.2d 62) in *Cammers* specified the particular manner in which damages were to be determined upon remand. We can therefore only conclude that this was to be done in accordance with section 9—113 which is quite specific: "[S]uch damages to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain." In our opinion section 9—113 operates not as a delegation of the power of eminent domain, but as a limitation upon its exercise under the conditions described; *viz.*, the additional requirement of the consent of the appropriate highway authority. This is entirely consonant with the general doctrine in this State that one condemning authority may take the property of another possessing the same power only where there is an explicit grant of such power from the legislature. Compare *Village of Elmwood Park v. Forest Preserve* (1974), 21 Ill. App. 3d 597, 316 N.E.2d 140. ·

The phrase, "in the manner provided by law," was construed by the supreme court in *Oak Park Federal Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, 296 N.E.2d 344. In that case the court was called upon to construe subsection (*l*) of section 6 of article VII of the constitution of 1970. It held:

"We are convinced that the language 'in the manner provided by law' in this subsection of the constitution does not refer to the Revenue Act of 1939 but envisages specific enabling legislation directed to this section of the constitution." 54 Ill. 2d 200, 204, 296 N.E.2d 344, 347.

In the instant case the "specific enabling legislation" lies in the Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*) and the delegation of that power to telephone companies under section 4 of "An Act relating to the powers, duties and property of telephone companies" (Ill. Rev. Stat. 1979, ch. 134, par. 20).

We have therefore concluded that the proper interpretation of the language of the supreme court is that damages must be ascertained in accordance with the provisions of the Eminent Domain Act. In its con-

cluding language the court again indicated that damages were to be awarded but again it did not particularize the method:

"We recognize that the damages to the plaintiffs remain to be ascertained upon the remand, and nothing we say here is intended to foreclose the presentation of evidence on that issue. * * * In our view the plaintiffs' future rights will be adequately protected by an adjudication that the defendant has encroached on the plaintiffs' land and an award of any damages the plaintiffs may have sustained." *Cammers*, 64 Ill. 2d 97, 103-04, 354 N.E.2d 353, 356.

The court was quite explicit in its holding: "We hold *only* that no showing of irreparable injury warranting the issuance of a mandatory injunction has been made. [Citation.]" (Emphasis added.) 64 Ill. 2d 97, 103, 354 N.E.2d 353, 356.

It is at least subject to debate whether the inclusion of private corporations, associations or persons within the scope of section 9—113 is inconsistent with the provisions for the assessment of damages in the manner provided by law for eminent domain. We do not so view the matter. While infrequently done, the legislature has from time to time delegated the power of eminent domain to private organizations. For example, the Blighted Vacant Areas Development Act of 1949 (Ill. Rev. Stat. 1979, ch. 67½, par. 91.1 *et seq*.). (See also 1966 U. Ill. L.F. 131.) In our opinion the inclusion of such organizations was to insure that not only those possessing eminent domain power at the time of enactment, but also those which might acquire the power in the future, be within the scope of section 9—113. It then follows that only those entities possessing the power of eminent domain are subject to section 9—113, and it further follows that section 9—113, as already mentioned, acts as a limitation upon the power and is not a substantive grant of the power.

We also note that private entities were introduced into section 9—113 by amendment in 1977, although it had applied to public entities since its inception in 1913. The apparent purpose was to require the owner of the fee who might wish to install an item covered by the section upon his own premises to obtain the necessary consent. Since the fee is subject to the highway easement, logic and common sense dictate that the holder of the easement consent before it is disturbed, even on a temporary basis.

It is admitted in the instant case that the defendant never sought to exercise its powers of eminent domain. The judgment of the trial court in awarding possession to the plaintiff was therefore correct. However, it remains to be decided what disposition may be made of this case. We believe the solution is found in *Springer v. City of Chicago* (1923), 308 Ill. 356, 139 N.E. 414. In resolving that case which in many respects is similar to the instant one the supreme court made the following order:

"The decree will be reversed and the cause remanded, with

directions to dismiss the bill as to the county collector and to enter a decree that unless the city shall within sixty days from the date of the decree agree with the appellee upon the amount of the compensation to be paid and shall pay it, or shall begin a proceeding to condemn the appellee's property in which the improvement is constructed and upon final judgment shall pay the amount of compensation fixed without delay, a perpetual injunction will be decreed against the city's occupying or using the property." 308 Ill. 356, 365, 139 N.E. 414, 418.

■■ Therefore, pursuant to the power conferred by Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)), the judgment of the circuit court of Menard County is affirmed, but the stay entered in that court is continued; the cause is remanded with directions to enter a supplementary order requiring the defendant within 60 days from the receipt by the circuit clerk of our mandate either (1) to agree with the plaintiff upon the amount of compensation to be paid and to pay it, or (2) to commence a proceeding in eminent domain to acquire the easements in question and upon final judgment in that suit to pay the amount of compensation fixed therein without delay.

Affirmed and remanded with directions.

TRAPP, P. J., and LONDRIGAN, J., concur.