EDWARD L. BENNO, Plaintiff-Appellant, v. THE CENTRAL LAKE COUNTY JOINT ACTION WATER AGENCY, Defendant-Appellee.

Second District   No. 2—92—0605

Opinion filed March 5, 1993.

Edward L. Benno, of Grayslake, appellant *pro se*.

Stewart H. Diamond and Dean W. Krone, both of Ancel, Glink, Diamond & Cope, P.C., of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Edward L. Benno, appeals *pro se* from the orders of the trial court which dissolved a temporary restraining order (TRO), dismissed plaintiff's complaint for trespass, and awarded damages to defendant, the Central Lake County Joint Action Water Agency. The essential issue on appeal is whether a utility is free to dig and install a water main in plaintiff's land without securing plaintiff's permission or exercising the power of eminent domain where the State of Illinois has the right to use that land for highway purposes.

On October 23, 1991, plaintiff filed a *pro se* petition for a TRO against defendant. In the petition, plaintiff sought to prevent defendant from digging under or into any portion of his property until after a full hearing. Plaintiff attached to the petition his affidavit in which he averred that he owned two parcels of land at 17960 W. Route 120 which extended to the center line of Route 120 so that the south 25 feet of his property were being used by the State for highway purposes. Plaintiff further averred that a waterline under his property would prevent him from building on his land in the event that the highway easement reverts to plaintiff. Plaintiff also attached a copy of the legal description and a plat of survey of the property, and a copy of a letter from the Department of Transportation (DOT). The letter states in relevant part that DOT admitted that plaintiff owned

the property up to the center line of Route 120. On the basis of these documents, the court granted a TRO.

On October 29, 1991, defendant filed an appearance and moved to dissolve the TRO. Defendant argued that the court erred in imposing the TRO by not giving notice to defendant and by not requiring plaintiff to post a bond to secure the TRO, and defendant suffered damages from the delay. Defendant also argued that plaintiff had no likelihood of prevailing on the merits and he would suffer no irreparable injury and has an adequate remedy at law if the pipe is laid under the shoulder of the road.

Defendant submitted the affidavit of its construction manager, William McDonnell, in which McDonnell stated that defendant was laying 32 miles of water transmission lines, including the line under the shoulder of Route 120. Defendant procured all of the easements or rights-of-way by donation or purchase and did not have to resort to condemnation. The lines were completed on either side of plaintiff's property, but defendant needed to connect the lines to pressure test them. Further, McDonnell averred that until the line was pressure tested, the contractor could not begin the surface restoration.

Defendant also attached a copy of the affidavit of its chairman, N. David Graf. According to Graf, defendant received written consent from DOT to install the waterline along Route 120. Defendant had intended to place the waterline on a portion of plaintiff's property which was not subject to the highway easement, but plaintiff demanded $196,300 for such an easement, so defendant relocated the line to be in the highway right-of-way. The waterline was completed except for the portion in front of plaintiff's property. The water carried through this line will serve the residents of Grayslake, Gurnee and Wildwood. Finally, defendant attached a copy of the highway permit by which DOT allowed defendant to place the lines in the highway right-of-way of Route 120.

The court found that the TRO was granted without notice; the TRO was granted improvidently; and there existed an adequate remedy at law for plaintiff. The court therefore dissolved the TRO on October 29, 1991.

The following day, plaintiff filed a complaint for trespass. Plaintiff alleged, *inter alia*, that in February 1991, Nestor Reina, an engineer for defendant, entered plaintiff's property. Reina gave plaintiff a packet of materials which stated that construction for the pipeline would begin in the area. Plaintiff informed Reina that the property extended to the middle of Route 120 and there were no easements on the property for defendant to use. Reina told plaintiff that defendant

would not enter the property. Early in March 1991, plaintiff saw workers with chain saws cutting down bushes and trees on his property and trees with X's spray-painted on them. One workman was inserting stakes into plaintiff's front yard. The man informed plaintiff that he worked for the general contractor of the project. Plaintiff told them there were no easements in the property that defendant could use, and plaintiff ordered the crew to cease destroying his trees and bushes and to leave the property. After the sheriff's deputies and Reina arrived, plaintiff showed Reina surveys of the property. Reina acknowledged that defendant had no right to enter the property and assured plaintiff they would leave and cease further trespasses. Later that month, plaintiff received a number of telephone calls from defendant requesting an easement on the property. Plaintiff further alleged that after the court dissolved the TRO, digging resumed on the property and, in the process, trees, bushes and fencing were being destroyed. In addition, plaintiff alleged that the general contractor "willfully and wantonly without notice broke the main power cable to the Property cutting off all electricity, water and heat" to plaintiff's home. Finally, plaintiff alleged that the past trespasses caused him damages in excess of $100,000 and future trespasses would cause further damages because plaintiff would be further deprived of trees and bushes expected to die as a result of the digging. In his prayer for relief, plaintiff requested an injunction in addition to damages.

Defendant filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). Defendant argued that the installation of a public improvement along a highway falls within the highway easement. On February 5, 1992, the court ruled that defendant had the right to install its pipeline beneath the highway right-of-way and there had been no trespass. The court therefore dismissed the complaint. Plaintiff filed a motion to reconsider, and defendant filed a petition for damages incurred as a result of the TRO and moved to amend the order so that the court could retain jurisdiction to hear the petition. The court denied the motion to reconsider, and it granted the motion to amend the order and allowed defendant leave to file its petition.

Plaintiff then filed a section 2—1401 petition for relief from the order which dissolved the TRO. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—1401.) Essentially, plaintiff alleged that defendant had notice that plaintiff was seeking a TRO because plaintiff telephoned defendant's office that morning and informed defendant's assistant director of plaintiff's intention to seek a TRO. Thus, plaintiff reasoned, the TRO

should not have been dissolved. Plaintiff also sought leave to file an amended complaint.

The court denied the section 2—1401 petition, and it denied plaintiff leave to file an amended complaint. The court granted defendant's petition for damages and awarded defendant $10,493.57. Plaintiff then timely appealed.

Plaintiff contends that defendant had no authority to lay its pipe on plaintiff's property. Plaintiff first cites to section 9—113(l) of the Illinois Highway Code (Highway Code), which provides that the consent granted to a public utility by DOT to place a pipeline under part of a highway is limited to the extent of the State's property interest. (Ill. Rev. Stat. 1991, ch. 121, par. 9—113(l).) Subsection (l) further states that the owner of the fee under the highway is not bound by the State's consent and the consent "shall not otherwise relieve the entity granted that consent from obtaining by purchase, condemnation or otherwise the necessary approval of any owner of the fee." (Ill. Rev. Stat. 1991, ch. 121, par. 9—113(l).) However, the provision does not apply to uses for highway or road purposes. Ill. Rev. Stat. 1991, ch. 121, par. 9—113(l).

Defendant responds that the water main is within the highway easement. Defendant cites to *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, in support of its argument. Defendant relies on the following language from *Cammers*:

> "[U]nderground installations which are for the benefit of the public at large and which do not impair the use of the highway have been regarded as falling within the highway easement. (*Barrows v. City of Sycamore* (1894), 150 Ill. 588, 593.)" *Cammers*, 64 Ill. 2d at 103.

Plaintiff argues that *Cammers* is distinguishable and is not controlling authority. First, as plaintiff correctly points out, the above-quoted portion of *Cammers* is *dictum*. (*Times Mirror Cable Television of Springfield, Inc. v. First National Bank* (1991), 221 Ill. App. 3d 340, 351; *Lewis v. Illinois Bell Telephone Co.* (1982), 107 Ill. App. 3d 97, 99.) *Lewis* rejected the supreme court's interpretation of *Barrows* in *Cammers*. (See also *Cammers*, 64 Ill. 2d at 104 (Ryan, J., dissenting).) *Lewis* held that where the land is in an unincorporated area, the underground installation was an additional burden on the fee owner and was not part of the highway easement. (*Lewis*, 107 Ill. App. 3d at 101.) (We note, parenthetically that section 9—113(a) was amended in 1988 to also require consent for highways within a municipality. See Ill. Rev. Stat. 1991, ch. 121, par. 9—113(a).)

The holding of *Lewis* is directly on point factually with the present cause. However, we agree with plaintiff that *Cammers* is not controlling authority for another reason. *Cammers* applied the 1973 version of section 9—113 which provided, in relevant part, that, " 'No ditches, drains, track, rails, poles, wires, pipe line [*sic*] or other equipment of any public utility company *** shall be located, placed or constructed *upon or along* any highway *** without first obtaining the written consent of the appropriate highway authority ***.' " (Emphasis added.) (*Cammers*, 64 Ill. 2d at 101, quoting Ill. Rev. Stat. 1973, ch. 121, par. 9—113.) Section 9—113 was amended in 1984, to state, "No ditches, drains, track, rails, poles, wires, pipe line [*sic*] or other equipment of any public utility company *** shall be located, placed or constructed upon, *under* or along any highway *** without first obtaining written consent of the appropriate highway authority ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121, par. 9—113(a).) The 1973 version further provided:

> "[C]onsent to so use a highway may be granted subject to such terms and conditions not inconsistent with this Code as the highway authority deems *for the best interest of the public.* The petitioner shall pay to the owners of property abutting upon the affected highways established as though by common law [*sic*] plat all damages the owners may sustain by reason of such use of the highway ***." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 121, par. 9—113.)

The 1984 amendment also added subsection (l) to section 9—113, which, as noted above, limits the State's consent to the extent of its interest in the land.

When the legislature has made a material amendment to a statute after judicial interpretation of the statute, it is presumed that the legislature intended to effect a change in the law. (*DeGrand v. Motors Insurance Corp.* (1992), 146 Ill. 2d 521, 526.) The 1984 amendments drastically altered section 9—113. (Compare Ill. Rev. Stat. 1985, ch. 121, par. 9—113 with Ill. Rev. Stat. 1983, ch. 121, par. 9—113.) We conclude that the legislature intended to change the law.

No case has interpreted section 9—113(l) or considered the effect of the amended language of section 9—113(a). All of the cases cited by both parties predate the statutory amendments. Thus, we will apply the rules of statutory construction to determine whether defendant was required to obtain plaintiff's consent prior to installing the water main. The goal of statutory interpretation is to give effect to the intent of the legislature in enacting the statute. (*Balmoral Racing Club, Inc. v. Illinois Racing Board* (1992), 151 Ill. 2d 367, 390.) That

intent should be derived from the language of the statute, the evil to be remedied and the object of the provision. *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 24.

According to the plain language of section 9—113(l), the public utility must obtain the consent of the property owner, unless the construction is for a highway purpose. (Ill. Rev. Stat. 1991, ch. 121, par. 9—113(l).) Defendant does not argue that installation of the water main is for a highway purpose. Justice Ryan, in his dissent to *Cammers*, explained that no one could lay sewer pipes on the right-of-way without the consent of the highway authorities because the use of the land is "subject to the right of the public to unobstructed use of the highway easement. The effect of section 9—113 is to ensure that no one—whether an abutting landowner, a public utility, or a private company acting with permission of the landowner—will interfere with the public's highway easement." (*Cammers*, 64 Ill. 2d at 107 (Ryan, J., dissenting).) Thus, the water main, like a sewer, is not being installed for a highway purpose.

Defendant argues that it did not need plaintiff's permission because the installation of the water main was within the easement. "Obtaining a right-of-way by easement is an interest in land ***." (*Greater Peoria Sanitary & Sewage Disposal District v. Baise* (1992), 234 Ill. App. 3d 622, 626.) If the unlimited use of the highway shoulder is a use permitted under the easement rights of DOT, then, under section 9—113(l), defendant did not need plaintiff's permission. If, however, DOT's easement is limited to using the highway and right-of-way solely for highway purposes, then defendant needed plaintiff's permission to install the water main on plaintiff's land because the use would be beyond the scope of the State's interest in the property. Plaintiff relies on *In re Onarga, Douglas & Danforth Drainage District* (1989), 179 Ill. App. 3d 493, for the proposition that Illinois courts "have been loath to increase the usage to which an easement is put even through [*sic*] the proposed use is relative to the original purpose of a constituted easement." (*Onarga*, 179 Ill. App. 3d at 494-95.) In *Onarga*, the court held that replacing a 10-inch drainage tile with a 24-inch drainage tile was an impermissible increase in the burden on the servient estate. 179 Ill. App. 3d at 495.

Defendant responds that under *Cammers* the scope of the highway easement includes underground improvements made for the benefit of the public. However, as noted above, the statutory language regarding the "best interest of the public" was deleted in the 1984 amendment to the statute. Thus, whether the project is for the benefit of the public is no longer a factor.

Defendant further argues, however, that the result in *Cammers* does not depend on section 9—113, but is based on common-law principles. We disagree. *Cammers* held that the consent of the State, pursuant to section 9—113, did not relieve the cable company from liability to the property owners for damages. (*Cammers*, 64 Ill. 2d at 102.) If *Cammers* applied common-law principles, the court would have allowed the injunction (see 64 Ill. 2d at 103) and would have found that the action of the cable company constituted a trespass (64 Ill. 2d at 108 (Ryan, J., dissenting)).

■ We conclude that the installation of the water main is beyond the scope of the easement. Defendant does not have an easement in the property. The easement here belongs to DOT for highway purposes, and an easement may not be extended to accommodate other uses. (See *McCann v. R.W. Dunteman Co.* (1993), 242 Ill. App. 3d 246, 255.) As discussed above, a water main is not a highway purpose. (See *Cammers*, 64 Ill. 2d at 107 (Ryan, J., dissenting).) The installation of the water main on plaintiff's property would constitute a trespass at common law. (See *Brinkley v. Brinkley* (1988), 174 Ill. App. 3d 705, 709, 713.) The only authority for defendant to install the water main is pursuant to section 9—113(l), the statutory abrogation of the common law, or if it exercises the power of eminent domain.

■ With these principles in mind, we now consider whether the trial court erred in dismissing plaintiff's complaint for trespass. A motion to dismiss a complaint admits all well-pleaded facts alleged in the complaint. (*Carrillo v. Hamling* (1990), 198 Ill. App. 3d 758, 764.) Although defendant ostensibly brought the motion to dismiss under section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615), the motion actually was in the nature of a motion to dismiss based on affirmative matter which defeats the claim (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9)). A complaint should not be dismissed pursuant to section 2—619 unless it is clear that no set of facts exists which would entitle the plaintiff to recover. *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 874.

In his complaint for trespass, plaintiff alleged that he owned the property on which defendant entered and began installing the water main. Plaintiff also alleged that he did not give defendant permission to install the water main. Plaintiff further alleged that defendant's actions destroyed plaintiff's trees and bushes and defendant acted willfully and wantonly. (See *Rodrian v. Seiber* (1990), 194 Ill. App. 3d 504, 509-10.) A trespass is the entry onto another's land without permission, invitation, or other right. (*Hendle v. Stevens* (1992), 224 Ill. App. 3d 1046, 1055.) The allegations of the complaint are sufficient for the court to find that defendant failed to comply with the require-

ments of section 9—113(l) and that defendant wrongfully entered plaintiff's land. Defendant did not present any affirmative matter to show that it exercised the power of eminent domain to acquire the right to install the water main. In addition, plaintiff's request for a permanent injunction is properly supported by allegations that he suffered continuing trespasses. (*Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 928.) We conclude that the court erred in dismissing plaintiff's complaint.

■ Defendant argues that plaintiff's appeal should be limited to reviewing the dismissal of the complaint because, according to defendant, plaintiff waived the other issues by failing to argue them on appeal. (See 134 Ill. 2d R. 341(e)(7); *Stichauf v. Cermak Road Realty* (1992), 236 Ill. App. 3d 557, 566.) In the concluding paragraph of his appellant's brief, plaintiff requests that we reverse any ruling of the circuit court which was based on the erroneous finding that defendant was free to dig and install the water main in plaintiff's land without his permission. However, the order dissolving the TRO was also based on the finding that defendant did not have notice of the hearing. Thus, a basis still exists for the dissolution of the TRO. In addition, defendant's petition for damages and plaintiff's section 2—1401 petition were based in part on the question of notice of the hearing for the TRO. Plaintiff did not submit a report of proceedings or a bystander's report. We must assume that the trial court granted defendant damages based on plaintiff's failure to notify defendant of the hearing for the TRO. (See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92.) Consequently, we will not disturb that ruling.

The judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings on plaintiff's complaint.

Affirmed in part; reversed in part and remanded.

WOODWARD and BOWMAN, JJ., concur.